**AETNA CASUALTY & SURETY COMPANY, Plaintiff,**

v.

**SPARTAN MECHANICAL CORPORATION, et al., Defendants.**

**SPARTAN MECHANICAL CORPORATION, Third–Party Plaintiff,**

v.

**Brendan SEXTON, et al., Third–Party Defendants.**

**No. 89–CV–2776 (JRB).**

United States District Court, E.D. New York.

June 4, 1990.

Hart & Hume, New York City, for plaintiff; Maureen Glynn Powers and Henry James Wallach, of counsel.

Fisher & Fisher, Brooklyn, N.Y., for defendant and third-party plaintiff, Spartan Mechanical Corp.; Andrew S. Fisher and Peter M. Kutil, of counsel.

Victor A. Kovner, Corp. Counsel of the City of New York, New York City, for third-party defendants; Alan Winkler, Asst. Corp. Counsel, of counsel.

## MEMORANDUM–DECISION & ORDER

BARTELS, District Judge.

This is a motion to dismiss a third-party complaint pursuant to Fed.R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction, or, in the alternative, pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief can be granted. The main suit is a diversity action predicated upon a breach of contract between Aetna Casualty & Surety Company ("Aetna") and Spartan Mechanical Corporation and several related individuals and other corporations ("Spartan"). Spartan has filed a third-party complaint for contribution and indemnification from several third-party defendants who are officers or agencies of the City of New York (the "City"). On the motion to dismiss the following questions are raised: (1) whether in this suit based upon diversity of citizenship the Court has ancillary jurisdiction over the third-party action; (2) whether under New York law Spartan can be entitled to contribution from the City for breach of contract by Spartan; and (3) whether under New York law Spartan is entitled to indemnification based on the City's alleged wrongdoing, absent an indemnity agreement providing for the same.

### FACTS

On December 21, 1982, and April 26, 1984, New York defendant Spartan executed indemnity agreements whereby it agreed to indemnify Connecticut plaintiff Aetna as an inducement for and in connection with certain bonds it was anticipated that Aetna, as Spartan's surety, would is-

sue. Aetna was to assure Spartan's performance of construction contracts and payment of subcontractors or suppliers, and Spartan, in turn, entered into the indemnity agreements.

Subsequently, on June 10, 1985, Spartan and the City entered into a contract (the "Contract") under which Spartan agreed to install heating and ventilation systems at a construction project called the Queens North Borough Repair Shop. In conjunction with the Contract, Aetna executed a payment bond for $2,895,000 and a performance bond for $2,895,000 (the "Bonds") in favor of the City, as obligee, with Spartan as principal and Aetna as surety. The Bonds bound Aetna, "if requested to do so by the City, to fully perform and complete the Work to be performed under the Contract ... if, for any cause, the Principal fails or neglects to so fully perform and complete such work." The Bonds further provided that "if the Principal, his representatives or assigns, shall well and faithfully perform the said Contract ... then this obligation shall be null and void...."

Spartan began work on the project, but on June 10, 1988, after notice and a hearing, the City declared Spartan in default on the Contract, and on June 16, 1988, the City called upon Aetna to fulfill its obligations under the Bonds. Aetna complied, while fully reserving the rights of Spartan, if any, against the City.

On August 22, 1989, Aetna commenced the instant breach of indemnification contract action against Spartan in this court, seeking $111,639.56 on the performance bond, $298,150.28 on the payment bond, and $83,420.69 in interest, attorneys' fees, consultants' fees, and disbursements to which it claims it is contractually entitled. Spartan, in its answer, alleges that Aetna knew or should have known that the declaration of default by the City was wrongful. Accordingly, in affirmative defenses Spartan claims that 1) Aetna had no obligation to perform under the Bonds and therefore performed as a volunteer; and 2) its performance under the Bonds was not in "good faith," as required under the indem-

nity agreements. Claiming lack of "good faith" on Aetna's part, Spartan also counterclaims against Aetna for breach of the indemnity agreements.

An important event occurred on January 12, 1990, when Spartan impleaded the City as a third-party defendant in this action. This third-party complaint alleges that Spartan was not able to properly perform the Contract, and therefore became liable on the indemnity agreements, because of acts and omissions by the City—e.g., the City did not provide Spartan with adequate or correct plans, the City made numerous changes which caused the work to be delayed, and the City failed to coordinate the work properly. Accordingly, Spartan claims that, should it be held liable to Aetna, Spartan is entitled to have recovery over and against the City on the basis of either contribution or indemnity.

Spartan has also commenced a separate action against the City in the Supreme Court of the State of New York for the County of Queens, in which it seeks $7,600,000 in damages for breach of the Contract, claiming that the City wrongfully declared it in default.

## DISCUSSION

### I

### ANCILLARY JURISDICTION

Spartan's impleader of the City, a non-diverse third-party, raises the question of this Court's jurisdiction over such a claim. Despite the fact that federal courts, as courts of limited jurisdiction, are empowered to hear only cases and controversies over which both Article III of the Constitution *and* federal statutes have granted subject matter jurisdiction, the ill-defined doctrine of "ancillary jurisdiction"—judge-made and allegedly rooted in a "common sense solution to the problems of piecemeal litigation," C. Wright, A. Miller, & E. Cooper, *Federal Practice & Procedure* § 3523 at 82 (1984)—has long been relied upon by the federal courts to hear disputes over which subject matter jurisdiction has been expressly conferred neither by statute nor by the Constitution. *See Id.*

### *"Property" Jurisdiction*

The doctrine of ancillary jurisdiction was first articulated in *Freeman v. Howe*, 65 U.S. (24 How.) 450, 16 L.Ed. 749 (1860). In *Freeman*, a New Hampshire resident, seeking to collect on certain bonds, brought a diversity action in federal court against a Massachusetts railroad. The *quasi in rem* suit was commenced by service of a summons and complaint, and by seizure of several of the defendant's railroad cars by Freeman, a United States marshall, pursuant to a process of attachment. Thereafter, Massachusetts-domiciled mortgagees of the railroad company sued Freeman in replevin in Massachusetts state court. Pursuant to the state writ of replevin, a Massachusetts sheriff seized the railroad cars from Freeman. At trial in the state court matter, Freeman defended his possession of the railroad cars by citing the federal process of attachment, but this defense was overruled and the mortgagees prevailed.

On appeal, the Supreme Court reiterated what it had said on prior occasions regarding conflicting processes from different courts, namely, that the question as to which authority should prevail depends upon "which jurisdiction had first attached by the seizure and custody of the property under its process." *Id.* at 455. This, of course, answered the question on appeal: Freeman's right to possess the railroad cars pursuant to the federal process of attachment could not be trumped by a subsequently issued writ of replevin.

However, the Court proceeded to address several alternative contentions that the Massachusetts mortgagees had made, among them, that the Massachusetts mortgagees had to be allowed to assert their rights in state court or else be without remedy; they could not assert their rights in federal court as they were domiciliaries of the same state as the plaintiff in the federal suit, the Massachusetts railroad. With this argument the Court disagreed, finding that such a claim was not an *original* suit for which independent subject matter jurisdiction must exist, "but *ancillary* and dependent, supplementary merely to the original suit, out of which it had arisen, and ... maintained without reference to the citizenship or residence of the parties." *Id.* at 460 (emphasis added). Thus, it was early established, and long held thereafter, that so long as the federal court has subject matter jurisdiction over the main action, the court has jurisdiction over disputes ancillary to that action where the action involves property over which the federal court has exclusive control. "Most of the early cases of ancillary jurisdiction were of this type." Wright, *supra* § 3523 at 88–89 (citing cases).

### *Enforcement Jurisdiction*

The same rationale was extended to actions brought in federal court to carry out or enforce federal judgments. As the Court stated in *Dugas v. American Sur. Co.*, 300 U.S. 414, 57 S.Ct. 515, 81 L.Ed. 720 (1937):

> [A Supplemental] bill may be brought in a federal court in aid of and to effectuate its prior decree to the end that the decree may be carried fully into execution or that it may be given fuller effect, but subject to the qualification that the relief be not of a different kind or on a different principle. Such a bill is *ancillary* and dependent, and therefore the jurisdiction follows that of the original suit, regardless of the citizenship of the parties to the bill or the amount in controversy.

*Id.* at 428, 57 S.Ct. at 521 (emphasis added and footnote omitted).

### *Compulsory Counterclaims*

The next major development in the history of ancillary jurisdiction occurred in *Moore v. New York Cotton Exch.*, 270 U.S. 593, 46 S.Ct. 367, 70 L.Ed. 750 (1926), where the Court held that, so long as a federal court has subject matter jurisdiction over the main suit, the court can rule on a compulsory counterclaim where the counterclaim does not have an independent jurisdictional basis, even after the main suit has been dismissed on the merits. In *Moore* the plaintiff's anti-trust suit was in federal court under federal question juris-

diction, being predicated upon the Sherman Act. The plaintiff, a cotton exchange, alleged that the defendant, a competing cotton exchange, was, in restraint of trade, denying plaintiff access to defendant's telegraphically-disseminated cotton market quotations. The plaintiff sought a mandatory injunction compelling defendant to provide the quotations to it. The defendant counterclaimed and also sought an injunction, alleging that the plaintiff was purloining the quotations and disseminating them to others. Plaintiff's claim was dismissed and defendant was granted an injunction. On appeal, the plaintiff claimed that the federal court had no power to enter the injunction against it as the state-law counterclaim lacked an independent jurisdictional basis. The Supreme Court disagreed with plaintiff, saying—

> So close is the connection between the case sought to be stated in the bill and that set up in the counterclaim, that it only needs the failure of the former to establish a foundation for the latter; but the relief afforded by the dismissal of the bill is not complete without an injunction restraining [plaintiff] from continuing to obtain by stealthy appropriation what the court had held it could not have by judicial compulsion.

*Id.* at 610, 46 S.Ct. at 371.

### Pendent Jurisdiction & Later Developments

Whereas ancillary jurisdiction involves claims made by parties other than the plaintiff which have no independent subject matter jurisdictional basis, pendent jurisdiction, as recognized by the now-familiar case of *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966), involves claims asserted by the plaintiff which have no independent jurisdictional basis. The theory behind pendent jurisdiction is that since Article III of the Constitution grants federal courts the power to hear "cases" arising under federal law, those controversies spawned from a "common nucleus of operative fact," *Gibbs*, 383 U.S. at 725, 86 S.Ct. at 1138—i.e., those that a plaintiff "would ordinarily be expected to try ... all in one judicial proceeding," *id.*—are really part and parcel of the same "case" as far as the constitution is concerned. *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 371, 98 S.Ct. 2396, 2401, 57 L.Ed.2d 274 (1966).

Thus, under pendent jurisdiction, a plaintiff with a claim that comes within the federal question subject matter jurisdiction of the federal court can append thereto state-law claims lacking an independent jurisdictional basis. *See Gibbs*, 383 U.S. 715, 86 S.Ct. 1130. Significantly, however, in *Gibbs*, the pendent claim was between the original parties to the suit.

Ancillary jurisdiction, to the extent discussed above, and pendent jurisdiction as used in *Gibbs*, were, in themselves, not very troublesome jurisdictionally as they were either infrequently used and were absolutely necessary for the federal courts to act as courts, *see* Wright, *supra* § 3523 at 88, or did not involve claims against additional parties for which there was no independent subject matter jurisdiction. However, the Supreme Court's language in *Moore*, the liberalization of third-party practice through the adoption of the Federal Rules of Civil Procedure in 1938, and the Court's decision in *Gibbs*, had at least two major effects:

The first was a gigantic increase in the scope of ancillary jurisdiction in the lower federal courts. This occurred even though: a) nowhere in *Moore* is the word "ancillary" used and the Court's statement in *Moore* appears to be nothing more than a recognition of the then well-established principle that ancillary jurisdiction is properly exercised when needed to give full effect to a decree; and b) the Supreme Court has never, in this century, expressly held that the use of ancillary jurisdiction in any but the property-controlling and judgment-effectuating situations discussed *supra* is proper;[1] and c) the Federal Rules of

1. Indeed, as late as 1925 the Supreme Court stated, "no controversy can be regarded as dependent or ancillary unless it has direct relation to property or assets actually or constructively drawn into the court's possession or control by the principal suit," *Fulton Bank v. Hozier*, 267

Civil Procedure do not, and cannot, expand the jurisdiction of the federal courts. Despite all of this, the lower courts and litigants nevertheless have used *Moore, Gibbs*, and the Federal Rules of Civil Procedure to greatly expand the ancillary jurisdiction of the federal courts to a scope never contemplated by the Supreme Court. While, at a minimum, it has at least been required that a claim be "logically related" to the main action to come within the court's ancillary jurisdiction, Wright, *supra* § 3523 at 96; *cf. Federman v. Empire Fire & Marine Ins. Co.*, 597 F.2d 798, 812 n. 21 (2d Cir.1979) (criticizing "logical relation" test as "overbroad" and resulting in "uncertainty in application"), the boundaries of ancillary jurisdiction have stretched far and wide. Far from its humble beginnings, ancillary jurisdiction is now said to encompass much more than property-controlling and judgment-effectuating claims. As the Second Circuit has said: "[W]hen, subsequent to the filing of the complaint, a party other than the original plaintiff injects state claims into a controversy as counterclaims, cross-claims, or third-party claims, such claims fall within the court's ancillary jurisdiction...." *Federman*, 597 F.2d at 810. Thus, according to Professor Wright,

> [a]ncillary jurisdiction is now universally accepted over defendant's compulsory counterclaims under Rule 13(a). It also permits the courts to bring in additional parties to respond to these counterclaims, under Rule 13(h).... [W]hen [a] permissive counterclaim takes the form of a set-off, ... ancillary jurisdiction will be available. Cross-claims under Rule

13(g) are ancillary. Impleaded third-party defendants under Rule 14 fall within ancillary jurisdiction.... Ancillary jurisdiction is available in interpleader proceedings under Rule 22. Intervention as of right under Rule 24(a) comes within the court's ancillary jurisdiction....

Wright, *supra* § 3523 at 106–113 (footnotes omitted).[2]

The second result is that, although ancillary and pendent jurisdiction are discrete concepts, they, along with the liberal concepts of joinder embodied in the counterclaim, cross-claim, and impleader provisions of the Federal Rules, were melded together and used in ways which exceeded the subject matter jurisdiction of the federal courts. Indeed, pendent/ancillary practice became so "liberal" that the Supreme Court on no less than four occasions—in *Zahn v. International Paper Co.*, 414 U.S. 291, 94 S.Ct. 505, 38 L.Ed.2d 511 (1973), *Aldinger v. Howard*, 427 U.S. 1, 96 S.Ct. 2413, 49 L.Ed.2d 276 (1976), *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 98 S.Ct. 2396, 57 L.Ed.2d 274 (1978), and *Finley v. United States*, —— U.S. ——, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989)—was forced to halt what others considered a "common sense solution to piece-meal litigation."

## II

## THE LIMITS OF ANCILLARY & PENDENT JURISDICTION

The diversity jurisdiction statute grants the district courts original jurisdiction of all civil actions where "the matter in contro-

U.S. 276, 280, 45 S.Ct. 261, 262, 69 L.Ed. 609 (1925).

**2.** Permissive counterclaims and cross-claims are generally held not to be within the ancillary jurisdiction of the federal courts.

Professor Wright notes that it "is difficult to discern any single rationaling principle that will explain" why some claims are, and others are not, within ancillary jurisdiction as understood by courts today. *Wright, supra* § 3523 at 115. He hypothesizes that "[p]erhaps the decisions simply reflect the desire of the federal courts to achieve a rational *balance* between the preservation of *constitutionally based jurisdictional limitations* and the disposition of all disputes arising

from one set of facts in one action." *Id.* (emphasis added). Similarly, the Second Circuit in *Federman* stated: "[Ancillary jurisdiction] is invoked to avoid piece-meal litigation which might occur due to the *irreconcilability* between *article III limits on jurisdiction* and the permissive rules of joinder adopted by the Federal Rules of Civil Procedure." 597 F.2d at 810 (emphasis added). The undersigned is unable to understand this dilemma over the alleged "irreconcilability" between the Constitution and the rules, practice, custom, usage, or convenience of the federal courts and the litigants who use them. Anything contrary to the Constitution must, of course, yield in its wake.

versy" [1] exceeds a certain amount (it is now $50,000; at the time of *Zahn* it was $10,000)[;] *"and* [2] is between citizens of different states." 28 U.S.C. § 1332(a)(1) (emphasis added). In *Zahn*, plaintiffs, who could not meet the jurisdictional-amount requirement had joined other, jurisdictionally-sound plaintiffs in a putative class action against a paper company from a different state who, it was alleged, had befouled plaintiffs' property with pollution. Under the *Gibbs* test, the claims of the plaintiffs who failed to meet the jurisdictional-amount requirement were undoubtedly just as much a part of the Article III "case," (or § 1332(a)'s "civil action") as the jurisdictionally adequate claims of the other plaintiffs since all of the claims arose out a common nucleus of operative fact. But Mr. Justice White, writing for the Supreme Court in *Zahn*, concentrated on the statutory phrase "matter in controversy" and held that *each* "matter in controversy" must not only be between citizens of different states but must also meet the jurisdictional-amount requirement. Accordingly, under *Zahn*, only those plaintiffs who individually meet the jurisdictional requirement may join a class action brought in federal court on the basis of diversity of citizenship—"one plaintiff may not ride on another's coattails." 414 U.S. at 301, 94 S.Ct. at 512 (internal quotations omitted). *Zahn* indicates, then, that the "matter in controversy" means *the claim of each party in the suit.*

In *Aldinger*, a county employee brought suit after she was fired for living with her boyfriend. She sued the individuals responsible for her discharge under 42 U.S.C. § 1983, and sued the county itself under state law only (the suit being pre-*Monell v. Department of Social Serv.*, 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978)). Subject matter jurisdiction over the § 1983 claims against the individuals was conferred by 28 U.S.C. § 1343(3), which vests the district courts with original jurisdiction over § 1983 suits. Plaintiff contended that principles of pendent jurisdiction permitted her, in her § 1983 suit, to join a state-law claim against an additional, nonfederal party over whom there was no independent jurisdictional basis. Her argument, according to the Supreme Court, was that

> since *Moore*, read as an "ancillary" case, adopted a "transactional" test of jurisdiction quite similar to that set out in *Gibbs*, there is presently no "principled" distinction between the two doctrines. Since under the Federal Rules "joinder of claims, parties and remedies is strongly encouraged," *Gibbs*, 383 U.S., at 724 [86 S.Ct., at 1137], her use of the Rules here is as a matter of jurisdictional power assertedly limited only by whether the claim against the county "derives from a common nucleus of operative fact." *Id.,* at 725 [86 S.Ct., at 1138]. Hence, ... based on *Gibbs'* treatment of pendent claims, and on the use of ancillary jurisdiction to bring in additional parties, ... her nonfederal claim against a nonfederal defendant falls within pendent jurisdiction since it satisfies *Gibbs'* test on its face.

427 U.S. at 12–13, 96 S.Ct. at 2419. The Supreme Court disagreed. As in *Zahn*, the Court looked to the statute that conferred jurisdiction over the main claim. "Resolution of a claim of pendent-party jurisdiction ... calls for careful attention to the relevant statutory language.... [W]e think a fair reading of the language used in § 1343, together with the scope of § 1983, requires a holding that the joinder of a municipal corporation, like the county here, for purposes of asserting a state-law claim not within federal diversity jurisdiction, is without the statutory jurisdiction of the district court." *Id.* at 17, 96 S.Ct. at 2421. *"[T]he addition of a completely new party would run counter to the well-established principle that federal courts ... are courts of limited jurisdiction." Id.* at 15, 96 S.Ct. at 2420 (emphasis added). Mr. Justice Rehnquist, writing for the *Aldinger* Court, left open the question of whether pendent-party jurisdiction would be proper in a case where, unlike suits under § 1983, "the grant of jurisdiction to a federal court is exclusive, ... as in the prosecution of tort claims against the United States under 28 U.S.C. § 1346," where "the argument of judicial economy and convenience can be

coupled with the additional argument that *only* in a federal court may all of the claims be tried together." *Id.* at 18, 96 S.Ct. at 2422 (emphasis in original). In closing, the Court emphasized that

> [b]efore it can be concluded that ... jurisdiction exists [over a new party sought to be joined who is not otherwise subject to federal jurisdiction], a federal court must satisfy itself not only that Art. III permits it, but that Congress in the statutes conferring jurisdiction has not expressly or by implication negated its existence.

*Id.*

Despite the rebuff of *Zahn* and *Aldinger*, litigants continued to seek common sense solutions to piece-meal litigation. In *Kroger*, the plaintiff, a resident of Iowa, brought a diversity action against a Nebraska corporation for the wrongful death of her husband. The Nebraska corporation, in turn, impleaded an Iowa corporation, and the plaintiff was allowed to amend her complaint to assert a cause of action against the Iowa corporation. The Eighth Circuit Court of Appeals held that, under *Gibbs*, "the District Court had jurisdictional power, in its discretion, to adjudicate the [plaintiff's] claim against the [Iowa corporation] because that claim arose from the 'core of operative facts' giving rise to both [plaintiff's] claim against [the Nebraska corporation] and [the Nebraska corporation's] claim against [the Iowa corporation"—notwithstanding the fact that there was no independent basis of federal jurisdiction over the plaintiff's state-law tort action against the Iowa corporation since both were citizens of the same state. 437 U.S. at 369–70, 98 S.Ct. at 2400–01. The Supreme Court, again, disagreed. The *Kroger* Court, per Mr. Justice Stewart, first noted that although Fed.R.Civ.P. 14(a) authorizes a plaintiff to assert a claim against a third-party defendant,[3] Rule 14(a) "does not purport to say whether or not such a claim requires an independent basis of federal jurisdiction. Indeed, it [the

Rule] could not determine that question, since *it is axiomatic that the Federal Rules of Civil Procedure do not create or federal jurisdiction.*" *Id.* at 370, 98 S.Ct. at 2400 (emphasis added). Justice Stewart agreed that, under *Gibbs*, plaintiff's claim was part of the Article III "case" which the federal court could constitutionally hear, but emphasized that "[c]onstitutional power is merely the first hurdle that must be overcome in determining that a federal court has jurisdiction over a particular controversy. For the jurisdiction of the federal courts is limited not only by the provisions of Art. III of the Constitution, but also by the Acts of Congress." *Id.* Then, as it had done in *Zahn* and *Aldinger,* the Court in *Kroger* turned to examine the jurisdictional statute and found that to allow the suit in question would "flout" the congressional requirement of complete diversity and would be contrary to the jurisdictional statute which *requires* that the "matter in controversy" be "between citizens of different states." *Id.* at 377, 98 S.Ct. at 2404. The *Kroger* Court then proceeded to examine the "context" or "posture" in which the claim had been asserted. In doing so, the Court referred to the history of ancillary jurisdiction in the lower federal courts, which here is necessary to repeat, saying, with particular relevance to this case:

> It is true ... that the exercise of ancillary jurisdiction over nonfederal claims has often been upheld in situations involving impleader, cross-claims or counterclaims. But in determining whether jurisdiction over a nonfederal claim exists, the context in which the nonfederal claim is asserted is crucial. See *Aldinger v. Howard,* 427 U.S. at 14 [96 S.Ct. at 2420]. And the claim here arises in a setting quite different from the kinds of nonfederal claims that have been viewed in other cases as falling within the ancillary jurisdiction of the federal courts.

---

3. Fed.R.Civ.P. 14(a) provides, in pertinent part: At any time after commencement of the action a defending party, as a third-party plaintiff, may cause a summons and complaint to be served upon a person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff.

First, the nonfederal claim in this case was simply not ancillary to the federal one in the same sense that, for example, the impleader by a defendant of a third-party defendant always is. A third-party complaint depends at least in part upon the resolution of the primary lawsuit. Its relation to the original complaint is thus not mere factual similarity but logical dependence. Cf. *Moore* ... The [plaintiff's] claim against the [third-party defendant], however, was entirely separate from her original claim against [the defendant], since the [third-party defendant's] liability to her depended not at all upon whether or not [the defendant] was also liable. Far from being an ancillary and dependent claim, it was a new and independent one.

Second, the nonfederal claim here was asserted by the plaintiff, who voluntarily chose to bring suit upon a state-law claim in federal court. By contrast, ancillary jurisdiction typically involves claims by a defending party haled into court against his will, or by another person whose rights might be irretrievably lost unless he could assert them in an ongoing action in a federal court. A plaintiff cannot complain if ancillary jurisdiction does not encompass all of his possible claims in a case such as this one, since it is he who has chosen the federal rather than the state forum and must thus accept its limitations.

*Id.* at 376, 98 S.Ct. at 2404 (footnotes and citations omitted). After examining Article III, the jurisdictional statute, and the "context" or "posture" in which the nonfederal claim was asserted, the Court determined that the plaintiff could not maintain her direct suit against the third-party defendant in federal court under the concepts of either ancillary or pendent jurisdiction.

Finally came *Finley,* the last case in the tetralogy, in which the Court addressed the question it had left open in *Aldinger,* i.e., whether a plaintiff's nonfederal claim against an additional, nonfederal party could be justified under "pendent-party" jurisdiction where the federal claim against the federal defendant could only be heard in federal court. The *Finley* Court's answer, per Mr. Justice Scalia, was in the negative. In *Finley,* Mrs. Finley was suing for the wrongful death of her husband and two of her children. Mr. Finley and the children, all Californians, had been killed as their airplane attempted to land at an airport operated by the city of San Diego at which the runway lights were maintained by the FAA. While landing, the airplane struck power lines owned by the San Diego Gas and Electric Company. Mrs. Finley sued the United States in federal court under the Federal Tort Claims Act ("FTCA"), claiming that the runway lights were negligently maintained. She later amended her complaint and sued the city of San Diego and the utility company, asserting state-law tort claims. The District Court allowed the amendment and held that the state-law claims could be asserted under pendent jurisdiction under *Gibbs,* "finding it 'clear' that 'judicial economy and efficiency' favored trying the actions together, and concluding that they arose 'from a common nucleus of operative facts.'" 109 S.Ct. at 2005. The Ninth Circuit reversed the district court, and, predictably in light of *Zahn, Aldinger,* and *Kroger,* the Supreme Court upheld the reversal.

First, the *Finley* Court in a footnote distinguished *Moore:* "That case involved jurisdiction over a counterclaim *brought by and against parties who were already properly before the court on other, federal-question grounds." Id.* 109 S.Ct. at 2006 n. 2 (emphasis added). Then, it rejected the notion, implied by Justice Stevens in dissent, that the liberal joinder practice of Fed.R.Civ.P. 14(a) and 20(a) somehow conferred the district court with jurisdiction over Mrs. Finley's state-law claims against the nonfederal defendants "since the Federal Rules explicitly provide that they 'shall not be construed to extend ... the jurisdiction of the United States district courts,' Fed.Rule Civ.Proc. 82." *Id.* 109 S.Ct. at 2009 n. 6. Finally, it examined Article III, the "posture" in which the nonfederal claim had been asserted against the nonfederal defendant, and the language of the FTCA jurisdictional statute.

Assuming that the nonfederal claim was part of the Article III "case" as far as *constitutional* power to decide the claim, the Court wrote that the most significant element of "context" or "posture" was that "*the added claims involve added parties over whom no independent basis of jurisdiction exists.*" *Id.* 109 S.Ct. at 2008 (emphasis added). While, in significantly restrictive language, the Court recognized that "in a *narrow class of cases* a federal court may assert authority over such a claim 'ancillary' to jurisdiction otherwise properly vested—for example, when an additional party has a claim against contested assets within the court's exclusive control, or when necessary to give effect to the court's judgment—," *id.* 109 S.Ct. at 2008 (emphasis added and citations omitted), the Court stressed that it had "never reached such a decision on the basis that the *Gibbs* test has been met." *Id.* And, as an additional matter of "posture," the Court was clear in reaffirming its long-held position that " 'neither the convenience of the litigants nor considerations of judicial economy can suffice to justify the extension of the doctrine of ancillary jurisdiction.' " *Id.* (quoting *Kroger,* 437 U.S. at 376–77, 98 S.Ct. at 2403). Accordingly, while recognizing that Mrs. Finley, unlike the plaintiff in *Kroger,* was essentially in federal court against her will since the United States can only be sued there under the FTCA—thus necessitating the maintenance of two suits if she could not prosecute her nonfederal claims in federal court—the *Finley* Court held that "that alone is not enough" to sustain ancillary jurisdiction. *Id.*

The Court then turned to the jurisdictional statute, 28 U.S.C. § 1346(b):

> The FTCA, § 1346(b), confers jurisdiction over "civil actions on claims against the United States." It does not say "civil actions on claims that requested relief against the United States," nor "civil actions in which there is a claim against the United States"—formulations one might expect if the presence of a claim against the United States constituted merely a minimum jurisdictional requirement, rather than a definition of the permissible scope of FTCA actions. Just as the

statutory provision "between ... citizens of different States" has been held to mean citizens of different States and no one else, *see Kroger* ..., so also here we conclude that "against the United States" means against the United States and no one else. Due regard for the rightful independence of state governments requires that federal courts scrupulously confine their own jurisdiction to the precise limits which the statute has defined.

*Id.* 109 S.Ct. at 2009 (footnotes and internal quotations omitted). Thus, the Court held that the language of the FTCA jurisdictional statute precluded the exercise of pendent party jurisdiction over Mrs. Finley's state-law claims.

Finally, Justice Scalia concluded the *Finley* opinion with language particularly relevant to this case: "All of our cases—*Zahn, Aldinger,* and *Kroger*—have held that a grant of jurisdiction involving particular parties does not itself confer jurisdiction over *additional claims by or against different parties.* Our decision today reaffirms that ... rule...." *Id.* 109 S.Ct. at 2010 (emphasis added).

### III

### POST–FINLEY DECISIONS

This Court has located four cases dealing squarely with the sweeping language of *Finley* as applied to third-party actions that lack an independent jurisdictional basis. Three of them—*King Fisher Marine Serv., Inc. v. 21st Phoenix Corp.,* 893 F.2d 1155 (10th Cir.1990), *Huberman v. Duane Fellows, Inc.,* 725 F.Supp. 204 (S.D.N.Y. 1989), and *Olan Mills, Inc. v. Hy–Vee Food Stores, Inc.,* 731 F.Supp. 1416 (N.D.Iowa 1990)—have concluded that *Finley* left ancillary jurisdiction over such claims unchanged. The other—*Community Coffee Co. v. M/S Kriti Amethyst,* 715 F.Supp. 772 (E.D.La.1989)—concluded that *Finley* ruled out ancillary jurisdiction over such claims.

The disputes in *King Fisher* arose out of the construction of a shopping mall. King Fisher Marine Service ("King Fisher"), a

Texas corporation, sued Hanson Development Company ("Hanson"), a Delaware corporation with its principal place of business in New Jersey. King Fisher sought delay damages and money allegedly owed it under its contract with Hanson. In turn, Hanson impleaded Langan Engineering Associates ("Langan"), who also had its principal place of business in New Jersey. Hanson asserted Rule 14(a) "pass-through" claims against Langan, and also sued Langan upon a separate claim for delay damages. The action between King Fisher and Hanson settled before trial, but a trial was had on the third-party delay damages issue and Hanson prevailed. Langan appealed, claiming that the district court had no jurisdiction over the third-party delay damages issue as there was no diversity of citizenship between Hanson and Langan, and as the delay damages claim between it and Hanson was not "logically related" to the King Fisher–Hanson main claim. While the jurisdiction over the Rule 14(a) "pass-through" claims of the type at issue here was not contested, the Tenth Circuit did address it before ruling on whether there was ancillary jurisdiction over the additional third-party suit for delay damages. Obviously aware of *Finley*, it nevertheless remarked that

> "[i]t is well settled ... that a court has ancillary jurisdiction of a defendant's proper rule 14(a) claim against a third-party defendant without regard to whether there is an independent basis of jurisdiction (e.g., diversity between the third-party litigants), so long as the court has jurisdiction of the main claim between the parties.

893 F.2d at 1158. The Tenth Circuit then proceeded to examine the third-party delay damages claim in light of *Aldinger, Kroger,* and *Finley,* and found that the separate delay damage claim, too, was within the district court's ancillary jurisdiction, *inter alia* holding that for the purposes of the delay damages claim Hanson was not an "added party" (which had so concerned the Supreme Court in *Kroger* and *Finley*), but an "impleaded party" under Rule 14(a). *Id.* at 1161, 1159–72.

Like *King Fisher, Huberman* also relied primarily on tradition in finding ancillary jurisdiction over a standard third-party claim for indemnity and contribution "pass-through" liability under Rule 14(a) which lacked an independent jurisdictional basis. Judge Leisure examined *Zahn, Aldinger, Kroger,* and *Finley,* and concluded that the district court had ancillary jurisdiction over the third-party claims. Reading the broad language of *Finley* (i.e., "All of our cases —*Zahn, Aldinger,* and *Kroger*—have held that a grant of jurisdiction over particular parties does not in itself confer jurisdiction over additional claims by or against different parties. Our decision today reaffirms that ... rule ...," 109 S.Ct. at 2010) against the factual background of *Finley* and the other Supreme Court cases, Judge Leisure distinguished a defendant's third-party claim noting that "in all of the cases, a federal plaintiff was attempting to bring into federal court more defendants over whom there was no independent basis of federal jurisdiction." 725 F.Supp. at 206.

> An impleader claim is not a pendent-party claim of the type that the Supreme Court limited in *Finley.* In *Finley,* the plaintiff was attempting to bring non-federal defendants into an action based on a statute which is explicitly written to allow jurisdiction over only federal defendants. In the case at bar, a defendant is attempting to join a third-party defendant under the impleader rule which explicitly allows such an inclusion.

*Id.* at 205. Judge Leisure wrote in conclusion:

> The case at bar presents a traditional model of third-party practice where a defendant in a diversity action impleads a potentially more responsible party. Third-party plaintiff ... is not in federal court by choice but rather involuntarily due to the lawsuit brought against it. It would be unjust, inefficient, and contrary to precedent to dismiss the third-party complaint.... This Court will not disavow years of impleader practice until clear signals are heard from the courts above.

*Id.* at 207.

In *Community Coffee,* however, finding *Finley*'s sweeping language "undeniable,"

715 F.Supp. at 774, the district court ordered the third-party plaintiffs to show cause why their Rule 14(a) indemnity and contribution claims against non-diverse third-party defendants should not be dismissed for lack of subject matter jurisdiction. While recognizing that the traditional holding that such claims are within the jurisdiction of the federal courts is "reasonable and pragmatic," *id.* at 773, *Community Coffee* opined that "post-*Finley* courts do not have ·jurisdiction over 'additional claims .... against additional parties' unless a statute specifically authorizes it. This proposition likely remains true whether the 'additional' parties are 'pendent parties,' or third parties impleaded for contribution and indemnity." *Id.* The court noted:

> No statute specifically authorizes ancillary jurisdiction over "additional parties" impleaded for contribution or indemnity under Rule 14(a). And, because the relationship between the indemnity/contribution claims and the original plaintiff's claim is one of "mere factual similarity," *see Finley,* 109 S.Ct. at 2008 (quoting *Kroger,* 437 U.S. at 376–77, 98 S.Ct. at 2404), indemnity/contribution claims are not within the "narrow class" of cases that the Court will permit despite the lack of statutory authorization. Thus, it appears that ancillary jurisdiction may no longer cover Rule 14(a) indemnity and contribution claims.

*Id.* (footnote omitted).[4]

Finally, in *Olan Mills, Inc. v. Hy–Vee Food Stores, Inc.,* 731 F.Supp. 1416 (N.D. Iowa 1990), the court held that it had ancillary jurisdiction over a third-party state-law claim for indemnification between non-diverse third-party litigants. The court stated that it found "the reasoning of *Huberman* to be more persuasive [than *Community Coffee* ] and [held] that *Finley* did not destroy ancillary jurisdiction pursuant to Fed.R.Civ.P. 14(a), and [agreed] with *Huberman* that the courts should not disavow years of impleader practice until clear

signs are heard from the courts above." 731 F.Supp. at 1421.

## IV

## PRESENT CASE

Contrary to *King Fisher, Huberman,* and *Olan Mills,* the Court holds that the present case comes under the prohibition of *Finley* and that it lacks subject matter jurisdiction over Spartan's third-party claim under Rule 14(a) for indemnity and contribution against the City as hereafter demonstrated.

### Rule 14(a) and Article III

■ The fact that Rule 14(a) contemplates precisely the type of claim involved here is irrelevant as far as jurisdiction is concerned. As Justice Scalia noted in *Finley,* and as the Federal Rules of Civil Procedure themselves recognize, the Rules, and Rule 14(a) in particular, cannot confer this court with subject matter jurisdiction. The Rules provide for many things, liberality of joinder included, but the Rules only apply to disputes within the court's subject matter jurisdiction. While Rule 14 should be construed liberally, it "does not authorize the use of impleader for practices that violate· the limits of federal jurisdiction...." Wright, *supra* § 1442 at 291. And although liberality of joinder is indeed a "common sense solution to piece-meal litigation," resulting in judicial economy, convenience to parties, and the resolution of factually-related claims in one suit, as *Finley* recognized, these factors cannot extend the doctrine of ancillary jurisdiction. 109 S.Ct. at 2008.

■ There is little doubt that Spartan's third-party claims are indeed part of a *Gibbs*–Article III "case" in term of facts. The City declared Spartan in default and called upon Aetna to make good on the Bonds; Aetna, in turn, called upon Spartan to fulfill its obligation under the indemnity

---

**4.** The district court in *Community Coffee* eventually found that it had subject matter jurisdiction over the third-party claims for indemnity and contribution because there was complete diversity of citizenship between the third-party plaintiffs and the third-party defendants. *Community Coffee Co. v. M/S Amethyst,* No. 87–CV–4528, slip op. at 5, 1989 WL 81279 (E.D.La. July 18, 1989).

agreements. Since the main claim and the third-party claim arose out of the same nucleus of operative fact, this Court, as recognized in *Gibbs*, *Zahn*, et al., has the constitutional power to adjudicate the whole "case." But this factor, too, is of limited relevance to the jurisdictional issue. For although there may be constitutional power to hear a non-federal claim between non-diverse third-party litigants as part and parcel of the federal "case," for that power to be exercised "an act of Congress must have supplied it. To the extent that such action is not taken, the power lies dormant." 109 S.Ct. at 2006 (internal quotation omitted).

### Diversity Statute

Here, the relevant statute, the diversity statute, does not grant the power to hear the third-party claim. As *Zahn* pointed out, the diversity statute does not grant the district courts jurisdiction over all "civil actions" where there happens to be a dispute "between citizens of different states" for the requisite jurisdictional-amount; rather, the district courts have jurisdiction over "civil actions" only where the *"matter in controversy* exceeds the sum or value of $50,000 ..., *and* is between citizens of different states." 28 U.S.C. § 1332(a)(1) (emphasis added). In the same manner as Justice Scalia pointed out when examining the FTCA's jurisdictional statute, *see* 109 S.Ct. at 2008, this Court notes that the diversity statute does *not* grant the district courts power to hear "all civil actions in which there is *a* matter in controversy exceeding $50,000 between citizens of different states"—a formulation one might expect if the presence of a diversity claim for $50,000 constituted merely a minimum jurisdictional requirement, rather than a definition of the permissible scope of the matters in controversy that can be heard in a diversity suit. As *Zahn* indicates, the phrase "matter in controversy" refers to the claim of each party to the suit; Spartan's third-party "matter in controversy" is not "between citizens of different states,"

and thus cannot be heard by this Court. The diversity statute simply does not authorize the extension of the doctrine of ancillary jurisdiction over claims between citizens of the same state. *Cf. Kroger*, 437 U.S. at 377, 98 S.Ct. at 2404.

The policy of the [diversity] statute calls for its strict construction. The power reserved to the states, under the Constitution, to provide for the determination of controversies in their courts may be restricted only by the action of Congress in conformity to the judiciary sections of the Constitution. Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined.

*Healy v. Ratta*, 292 U.S. 263, 270, 54 S.Ct. 700, 703, 78 L.Ed. 1248 (1933) (citations omitted).

### *"Posture"*

The Supreme Court has recognized two aspects of "context" or "posture" of relevance here in deciding whether the Court has jurisdiction over the claim asserted to be ancillary. The first, recognized by *Kroger*, is that defendants are "haled into court against their will" and, not having chosen the forum, should not be bound by the forum's subject matter restrictions. *See* 437 U.S. at 376, 98 S.Ct. at 2404. This aspect of posture, however, seems to have lost its validity in *Finley*'s wake. Impleader by a defendant (which, outside of cases in Admiralty or in cases governed by the old Conformity Act, was not *at all* available until the adoption of the Federal Rules in 1938, regardless of whether there was an independent jurisdictional basis, Wright, *supra* § 1441 at 287) *is not one of the "narrow* classes of cases," 109 S.Ct. at 2008 (emphasis added), that *Finley* recognizes as a proper use of ancillary jurisdiction.[5] Additionally, as the Supreme Court acknowledged in *Finley*, Mrs. Finley was essentially in federal court "against her

---

5. That is, "for example, when an additional party has a claim upon contested assets within the court's exclusive control, or when necessary to give effect to the court's judgment." 109 S.Ct. at 2008 (citations omitted).

will." Said the Court: "It is true that here, unlike in *Kroger*, ... the party seeking to bring the added claim had little choice but to be in federal rather than in state court, since the FTCA permits the Federal Government to be sued only there." 109 S.Ct. at 2008. Nevertheless, the Supreme Court relegated Mrs. Finley's added claim to state court, leaving Congress "able to legislate against a background of clear interpretive rules ..." 109 S.Ct. at 2010. In holding that the instant claims are not within the court's subject matter jurisdiction, this Court may work a hardship upon the defendant, but it is a hardship that Congress has the power to alleviate. The Constitution gives Congress alone the power to amend the jurisdictional statutes of the federal courts.

The second, and most important aspect of "posture" here (as in *Finley*, *"Zahn*, *Aldinger* and *Kroger*) is ... that the added claims involve added parties over whom no independent basis of jurisdiction exists." 109 S.Ct. at 2007–08. Accordingly, *Moore* offers Spartan no support because "that case involved jurisdiction over a counterclaim brought by and against parties who were already properly before the court...." 109 S.Ct. at 2006 n. 2. That distinction, says *Finley*, is a "central distinction." *Id.* Moreover, given that the Federal Rules are irrelevant in determining jurisdiction, the Court cannot follow *King Fisher*'s differentiation between "impleaded parties," permitted under Rule 14(a), and "added parties," held not to be covered by ancillary jurisdiction. The fact remains that the third-party claims depend upon ancillary jurisdiction to be heard in this court, and those claims are "added," by Spartan, against the City, a party "different" than Aetna, the original plaintiff to this suit. Thus, even though Spartan's claims against the City are logically related to the main claim, *see Kroger*, 437 U.S. at 376, 98 S.Ct. at 2404, *Finley's* "undeniable language," 715 F.Supp. at 774, has ruled out ancillary jurisdiction over "additional claims ... against different parties." 109 S.Ct. at 2010. Such claims cannot be heard where they lack their own independent jurisdictional basis.

■ "It is a fundamental precept that federal courts are courts of limited jurisdiction. The limits upon federal jurisdiction, whether imposed by the Constitution or by Congress, must be neither disregarded nor evaded." *Kroger*, 437 U.S. at 374, 98 S.Ct. at 2403. Mindful of this fundamental precept, and in light of the foregoing, the Court holds that under *Finley* it lacks subject matter jurisdiction over Spartan's third-party claims for indemnification and contribution and the third-party complaint is dismissed. *See Community Coffee*, 715 F.Supp. at 773 (*Finley* arguably sounds death knell for ancillary jurisdiction over third-party claims for indemnity and contribution). *Cf.* Wright, *supra* § 1444 at 328 (after *Finley*, it is "by no means assured" that ancillary jurisdiction over Rule 14 claims still exists).

## V

### STATE CLAIMS

Having decided that this Court has no ancillary jurisdiction over the third-party claim, further inquiry would normally end. However, the post-*Finley* decisions indicate a serious disagreement with this decision. Accordingly, the jurisdictional issue is apparently unsettled, and since the parties have also argued the case on its merits, the Court believes that, in the interest of judicial economy, it is appropriate to decide, in the alternative, whether the third-party complaint should be dismissed pursuant to Fed.R.Civ.P. 12(b)(6) for failure to state a claim. The predicate for the motion to dismiss is that (1) Spartan's claim for contribution is unavailable; and (2) Spartan has not adequately pleaded a claim for indemnification. Both parties agree that New York law governs the issues presented.

■ In this contractual dispute between Aetna and Spartan, Spartan cannot state a claim for contribution against the City. As stated by the Second Circuit in *Morse/Diesel, Inc. v. Trinity Indus., Inc.*, 859 F.2d 242 (2d Cir.1988):

[T]he New York Court of Appeals has construed New York's contribution statute, N.Y.Civ.Prac.L. & R. 1401 (McKinney 1976), as not permitting 'contribution between two parties whose potential liability to a third party is for economic loss resulting only from a breach of contract.' *Board of Educ. v. Sargent, Webster, Crenshaw & Folley,* 71 N.Y.2d 21, 24, 523 N.Y.S.2d 475, 476, 517 N.E.2d 1360, 1361 (1987). The Court of Appeals made it clear that section 1401 creates a right of contribution only among joint tortfeasors.

*Id.* at 249. Here, since Spartan is sought to be held liable to Aetna only for breach of contract, not for tort, Spartan can state no claim for contribution against the City.

■ Spartan also claims indemnification from the City. Since Spartan has no express agreement with the City for indemnification, its right to indemnification is an implied right. A right to indemnification arises by operation of law where one is held liable for the wrong of another. *McDermott v. City of New York,* 50 N.Y.2d 211, 217, 428 N.Y.S.2d 643, 646, 406 N.E.2d 460, 462 (1980). This implied right to indemnification is based upon the principle that one that is liable for a non-delegable duty that should have been discharged by another is entitled to full reimbursement for any resulting judgment. *Id.; Board of Educ. v. Sargent, Webster, Crenshaw & Folley,* 71 N.Y.2d 21, 29, 523 N.Y.S.2d 475, 479, 517 N.E.2d 1360, 1365 (1987); *Johnson Controls, Inc. v. Rowland Tompkins Corp.,* 585 F.Supp. 969, 969 (S.D.N.Y. 1984). Although contribution involves the sharing of tort liability in proportion to culpability, indemnification involves the complete shifting of liability. Where the defendant's liability to the plaintiff is not based *solely* on the wrongful act of the third-party defendant, no cause of action for indemnity will lie. *Salonia v. Samsol Homes, Inc.,* 119 A.D.2d 394, 402, 507 N.Y.S.2d 186, 193 (2d Dept.1986).

It is undisputed that Aetna's third and fourth claims for relief seek recovery for $298,150.28 it had to remit to others because of the payment bond: "Numerous subcontractors and vendors of Spartan who performed work and supplied material and equipment to the Project have made claims and demands upon Aetna, as surety, under [the payment bond] for payment of moneys owed to them by Spartan." Complaint at ¶ 26. Spartan's third-party complaint, however, alleges that the City delayed and obstructed Spartan's work under the Contract by issuing inaccurate plans, Third–Party Complaint at ¶ 13, making changes in the work, *id.* at ¶ 14, delaying making decisions and furnishing information, *id.* at ¶ 15, and failing to coordinate and supervise the work, *id.* at ¶ 16. Most important, the third-party complaint alleges:

> At no time was Spartan in default under the Contract. Notwithstanding the aforementioned actions or failures to take action …, Spartan at all times was ready, willing and able to perform the work pursuant to its Contract with the City…. The aforementioned actions or failures to take action … by [the City] … constitute breaches of the Contract by the City.

*Id.* at ¶¶ 18–19.

While the alleged "actions or failures to take action" and breach of the Contract by the City may explain the reason why Spartan did not perform the Contract, thus arguably giving Spartan a claim for indemnity against the City for Aetna's *performance bond* causes of action, they offer no excuse for Spartan's liability on the *payment bond* causes of action. Thus examined separately, upon the payment bond liability there is no claim adequately pleaded for indemnification. No where has Spartan claimed that it might be unjustly required to pay its subcontractors and suppliers whereas the City, in actuality, is the party with the non-delegable duty to pay those subcontractors and suppliers. Indeed, Spartan could not make this claim since paying its subcontractors and suppliers was Spartan's non-delegable duty, not the City's. That the City may have wrongfully declared Spartan in default of the Contract has no relation to Spartan's obligation to pay its subcontractors and suppliers for work and materials furnished prior to the declaration of default. Spartan's

third-party complaint recognizes this fact, and charges the City with acts that explain, not Spartan's failure to pay, but Spartan's failure to perform. *See Johnson Controls,* 585 F.Supp. at 973.

Since the City cannot have acted wrongfully in regard to the payment bond, it cannot be charged with indemnification as to the performance bond. As a matter of indemnity law, it is incorrect to view Spartan's performance bond liability separate from its payment bond liability. Although Aetna has set out its causes of action against Spartan according to the bonds—two causes of action for the performance bond; another two for the payment bond—Spartan is being sued only for breach of the indemnity agreements it had with Aetna. Accordingly, in seeking indemnity for only that liability for which indemnification is even remotely possible—i.e., the performance bond liability—the third-party complaint merely alleges a basis for proportionate, not full, liability, and therefore fails to state a claim for indemnification. Even where a defendant claims that a portion of its liability is one hundred percent due to the fault of another, such a claim does not seek to shift the entire burden of loss, and, thus is not a claim for indemnity. *See Salonia,* 119 A.D.2d at 402, 507 N.Y. S.2d at 193; *D'Ambrosio v. City of New York,* 55 N.Y.2d 454, 450 N.Y.S.2d 149, 435 N.E.2d 366 (1982); *Johnson Controls,* 585 F.Supp. at 973.

## CONCLUSION

On the basis of *Finley v. United States,* — U.S. ——, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989), this Court does not have subject matter jurisdiction over the third-party claims for contribution or indemnification as they lack an independent jurisdictional basis and are not within ancillary jurisdiction. Accordingly, the third-party defendant's motion to dismiss for lack of subject matter jurisdiction under Fed.R.Civ.P. 12(b)(1) is GRANTED. Alternatively, the Court finds that, under New York law, the third-party complaint fails to state a claim for which relief can be granted, and the third-party defendant's motion to dismiss under Fed.R.Civ.P. 12(b)(6) is GRANTED. SO ORDERED.