**O & K TROJAN, INC., a Delaware corporation, Plaintiff,**

v.

**MUNICIPAL & CONTRACTORS EQUIPMENT CORPORATION, a New York corporation, Municipal Machinery Co., Inc., a New York corporation, Joseph Muratore, Jr., and Joseph Muratore, Defendants.**

**Joseph MURATORE, Third–Party Plaintiff,**

v.

**CITY OF NEW YORK, Third–Party Defendant.**

**No. 89 Civ. 2377 (KTD).**

United States District Court, S.D. New York.

Oct. 22, 1990.

**432**

Katten Muchin & Zavis (Anthony J. McShane, of counsel), Chicago, Ill., Pollack & Kaminsky, (Martin I. Kaminsky, of counsel), New York City, for plaintiff.

Cahn Wishod Wishod & Lamb (Joel M. Markowitz, of counsel), Melville, N.Y., for defendant and third-party plaintiff, Joseph Muratore.

Victor A. Kovner, Mindy R. Koenig, Corp. Counsel of the City of N.Y. (Alan Winkler, of counsel), New York City, for third-party defendant.

## MEMORANDUM & ORDER

KEVIN THOMAS DUFFY, District Judge.

Plaintiff, O & K Trojan, Inc. ("Trojan"), seeks, inter alia, general and punitive damages from defendants Municipal & Contractors Equipment Corporation ("Contractors"), Municipal Machinery Company, Inc. ("Machinery Co."), Joseph Muratore Jr., and Joseph Muratore Sr. (collectively, "Municipal defendants"), based on alleged violations of: (1) the Racketeer Influenced and Corrupt Organizations Act, ("RICO") 18 U.S.C. § 1961 *et seq.;* (2) New York's Consumer Protection Act, N.Y.Gen.Bus.L. Art. 22–A § 349 (McKinney's 1988); (3) common law fraud; and (4) breach of contract arising from payments made into an escrow fund on forged documents. After issue was joined as to Muratore Sr., he impleaded the City of New York ("the City") for contribution.[1] Default judgment was entered on July 24, 1989 against Contractors, Machinery Co., and Muratore Jr. based on a failure to answer or move with respect to the complaint. On October 19, 1989, a hearing on Muratore Sr.'s order to show cause was conducted before me in order to determine whether Muratore Sr.'s litigation position would be compromised should he be found to be jointly and severally liable with the defaulters.[2] Trojan assured the court at that hearing that Muratore Sr. would not be held accountable to pay any part of the defaulter's judgment. The City now moves pursuant to Fed.R.Civ.P. 12(b)(1) and (b)(6) to dismiss the third-party complaint.

---

1. Muratore Sr. seeks contribution but cannot seek indemnification. Trojan, in its complaint, claims that certain letter agreements purportedly executed by New York City were forgeries. Since any recovery by Muratore, as third-party plaintiff, against the City necessitates a finding that Muratore Sr. was involved in providing forged documents, no possible claim for indemnification may be brought by him. *See Garrett v. Holiday Inns Inc.,* 58 N.Y.2d 253, 263, 460 N.Y.S.2d 774, 779, 447 N.E.2d 717, 722 (1983) (wrongdoer cannot seek indemnification for his resulting liability.)

2. Specifically, Muratore, Sr. did not want to be held liable for the damages for which the defaulters were liable by virtue of a default judgment. Muratore, Sr. avers that the only damages that should be exacted from him are those resulting from a trial on the merits.

## FACTS

Trojan is a manufacturer of construction equipment. Contractors and Machine Co. are corporations engaged in the business of selling, distributing, servicing, repairing, and modifying construction equipment and other large commercial vehicles and equipment. Complaint ¶¶ 2, 3. Muratore Jr. is the president of Contractors and vice-president of Machinery Co. Complaint ¶ 4. Muratore Sr. is president of Machinery Co. and vice-president of Contractors. From January 1986 until June 1987, Trojan entered into a series of agreements with the City in which Contractors agreed to provide certain construction equipment to the City. Complaint ¶¶ 15–21. The equipment was to be manufactured by Trojan in compliance with the City's specifications. Complaint ¶¶ 15–21. Thus, two separate sets of contracts were created, one between Trojan and Contractors ("the Trojan/Contractors agreement") for the manufacture of the equipment, and one between Contractors and the City ("the Contractors/City agreement") for the sale of the equipment.

Because Trojan had previous dealings with Machinery Co. which resulted in payment problems, it insisted on further payment assurances in the above mentioned contracts. Complaint ¶¶ 10–14, 59. Therefore, under the Contractors/Trojan agreements, Trojan, Contractors, and Marine Midland Bank, N.A. ("Bank"), entered into a series of escrow agreements whereby the Bank would act as escrowee for the funds of the Contractors/City contracts. Complaint ¶¶ 15–21. Distributions by the Bank from the escrow accounts were to be made only in accordance with letters of instruction signed by both Trojan and Contractors. The escrow agreements provided that Trojan require the City to mail the disbursements due and owing under the Contractors/City contracts directly to an escrow account at the Bank. Trojan alleges that it would have refused to manufacture the equipment required to fulfill Contractor's contractual obligations to the City without this agreement. Complaint ¶¶ 10–14, 59.

Disbursements were properly made under the escrow arrangement for the City's purchase of the first 36 front end loaders. Trojan was properly paid. With respect to its purchase of an additional 22 units, however, the City made payments directly to Contractors and it, in turn, failed to remit payment to Trojan for the manufacture of the units. Specifically, Trojan avers that the Municipal defendants: (1) executed escrow agreements with the knowledge that they did not intend to perform pursuant to the agreements; (2) forged letters to Trojan, purporting to set forth agreements by the City to remit its payments to the Bank with the knowledge that the signatures of the Bank's Deputy of Accounts and Audits of the Department of General Services of the City, Joaquin Capestany, would also be forged thereon; (3) accepted and used the disbursements sent by the City without advising Trojan that the payments from the City had been received and without paying Trojan the purchase price due on the equipment; and (4) concealed their fraudulent acts by representing to Trojan that any attempt by it to contact the City of New York would jeopardize the Contractors/City contracts. Complaint ¶¶ 28–68.

## DISCUSSION

### a. RICO

■ A defendant cannot obtain contribution for RICO liability. *Minpeco, S.A. v. Conticommodity Services, Inc.*, 677 F.Supp. 151, 155–56. (S.D.N.Y.1988). This prohibition against contribution follows from the omissions in the statute. In enacting RICO, Congress created a comprehensive list of civil remedies available to a plaintiff for a defendant's violation of the Act. *See* 18 U.S.C. §§ 1961 *et seq.* (1982). Contribution is not listed among the remedies. This is significant in that Congress did explicitly provide an extensive list of remedies within the statute, thus, any omissions therein are indicative of an intent to preclude. *See Seminole Electric Cooperative, Inc. v. Tanner*, 635 F.Supp. 582, 583 (M.D.Fla.1986) ("Nothing in RICO's statutory language or legislative history suggests that Congress intended federal courts to expand the civil remedies already created by RICO").

■ Moreover, the common-law remedy of contribution is antithetical to the statute's purpose. Section 1964(c) authorizes private suits by "[a]ny *person injured in his business or property* by reason of a violation. . . ." 18 U.S.C. § 1964(c) (emphasis added). Muratore, Sr. was never injured by any purported acts or omissions by the City. Section 1962 makes it unlawful for any person to use money derived from a pattern of racketeering activity to invest in an enterprise, to acquire control of an enterprise through a pattern of racketeering activity or to conduct an enterprise through a pattern of racketeering activity. 18 U.S.C. § 1962(a)–(c). If such a violation occurs, § 1964 authorizes such injured persons to recover treble damages. 18 U.S.C. § 1964(c). Because Muratore Sr.'s liability to Trojan, under its first and second causes of action, are predicated upon the Muratores' having committed RICO violations, permitting Muratore Sr. to receive contribution would have the effect of ameliorating the liability of a wrongdoer and necessarily align the wrongdoer with the class that Congress intended to protect. Furthermore, the right to seek contribution would serve to dilute the impact of assessing treble damages against the RICO violator. Treble damages are to punish past unlawful conduct. To allow contribution under the circumstances would soften the punishment in contravention of Congressional intent.

■ Standing for civil RICO relief requires that the plaintiff demonstrate the defendant has committed a predicate offense as delineated in 18 U.S.C. § 1961. *In Re Citisource, Inc. Secur. Litigation,* 694 F.Supp. 1069, 1079 (S.D.N.Y.1988). This mandates that the plaintiff prove the defendant had the requisite scienter for the underlying predicate offense. *United States v. Scotto,* 641 F.2d 47, 55–56 (2d Cir.1980), *cert. denied,* 452 U.S. 961, 101 S.Ct. 3109, 69 L.Ed.2d 971 (1981). To the extent that Muratore, Sr. claims the City is liable for negligently and inadvertently paying Contractors instead of remitting payment to escrow is of no moment and does not rise to the level of scienter anticipated under the statute. Moreover, the City, a munici-pal corporation, is incapable of having the criminal intent to support RICO's predicate offense requirement. *See In Re Citisource, Inc. Secur. Litigation,* 694 F.Supp. at 1079. As a final note on this issue, Murature Sr.'s argument for impleader defies logic because it presumes that blame should be laid on the City for the City's failure to trust the Muratores to pay for work that they had commissioned and that liability for failure to place money in escrow is attributable to the City.

b. ANCILLARY JURISDICTION

■ The only federal claims asserted in Trojan's complaint are predicated upon RICO violations. Since contribution is not available for RICO liability, there is no federal question jurisdiction over the third-party action. In addition, since Muratore is a citizen of New York State, there is no diversity jurisdiction over the third-party action and, thus no independent basis for subject matter jurisdiction over the impleader. However, the doctrine of ancillary jurisdiction allows a federal court to entertain a claim asserted after a complaint is filed, even if the claim may lack an independent basis for the exercise of federal jurisdiction, provided the court has jurisdiction over the subject matter of the action. *See Harris v. Steinem,* 571 F.2d 119, 122 n. 7 (2d Cir.1978). This court has no jurisdiction over the subject matter of the action once the federal claims fall.

Muratore Sr. avers that federal courts have long recognized that a defendant's claim for contribution and indemnity against a third-party defendant, pursuant to Fed.R.Civ.P. 14(a), are deemed within the court's ancillary jurisdiction. *Oneida Indian Nation v. County of Oneida,* 719 F.2d 525, 542 (2d Cir.1983). This proposition is short-sighted and not reconcilable with the current trend, for all practical purposes, towards limiting pendent party jurisdiction and restricting ancillary jurisdiction. *Finley v. United States,* 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989); *Staffer v. Bouchard Transportation Co.,* 878 F.2d 638, 643 n. 5 (2d Cir.1989); *Bruce v. Martin,* 724 F.Supp. 124, 129 (S.D.N.Y.

1989). Rule 14(a) cannot confer the federal court with subject matter jurisdiction, regardless that it contemplates the type of claim raised here. "The Rules provide for many things, liberality of joinder included, but the Rules only apply to disputes within the court's subject matter jurisdiction." *Aetna Casualty & Surety Insur. Co. v. Spartan Mechanical Corp. v. Brendan Sexton, et al.*, 738 F.Supp. 664 (S.D.N.Y. 1990); *see also Finley*, 109 S.Ct. at 2008 (added claims involving *added parties over whom no independent* basis of jurisdiction exists weigh heavily against the exercise of subject matter jurisdiction) (emphasis added).

Federal courts are courts of limited jurisdiction. The prospect of haling into court new parties over whom there is no independent basis for subject matter jurisdiction, compels the conclusion that ancillary jurisdiction can no longer be so broadly construed as to include third-party state law claims for indemnity or contribution against non-diverse persons. *Finley v. United States*, 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989). "[I]n a narrow class of cases a federal court may assert authority over such a claim 'ancillary' to jurisdiction otherwise properly vested—for example, when an additional party has a claim against contested assets within the court's exclusive control, or when necessary to give effect the court's judgment...." *Aetna Casualty & Surety Insur. Co. v. Spartan Mechanical Corp. v. Brendan Sexton, et al.*, 738 F.Supp. at 673 (citing *Finley*, 109 S.Ct. at 2008). Such is not the case at bar. Here, Muratore, Sr. seeks to add the City as a new party. There is no diversity jurisdiction and no federal question. Furthermore, Muratore, Sr. has no right to an asset in the District Court's possession. " '[N]either the convenience of the litigants nor considerations of judicial economy can suffice to justify the extension of the doctrine of ancillary jurisdiction' " under the circumstances. *Finley*,

109 S.Ct. at 2008 (quoting *Owen Equipment and Erection Co. v. Kroger*, 437 U.S. 365, 376–77, 98 S.Ct. 2396 at 2404, 57 L.Ed.2d 274); *see also Community Coffee Co. v. M/S Kriti Amethyst*, 715 F.Supp. 772, 774 (E.D.La.1989) ("it appears that ancillary jurisdiction may no longer cover Rule 14(a) indemnity and contribution claims").[3]

Finally, it is within my discretion to decline this claim for contribution in that a District Court should refuse to exercise discretion over a third-party complaint relating only to the complaint's pendent state law causes of action. *See Seminole Electric Cooperative, Inc. v. Tanner*, 635 F.Supp. 582, 584–85 (M.D.Fla.1986). This is especially true where the merits of the claim are questionable at best. Trojan contends that as part and parcel of a scheme to defraud it, the municipal defendants gained control of the funds by, unbeknownst to the City, forging the requisite letters prompting the City to release contract disbursements into the escrow account at the Bank. Allegedly in reliance on the validity of the letter agreements, Trojan manufactured and delivered all the equipment as required under the Contractors/Trojan contracts, the Bank remitted payment to Contractors directly and Trojan was never paid for its work. Complaint ¶¶ 17, 20, 25, 60. Furthermore, Trojan's complaint charges that Murature Sr. defrauded Trojan by wrongfully diverting funds, otherwise slated for escrow by agreement among the parties, for private unanticipated uses not in accordance with the agreements and that the City was unaware that funds were being improperly diverted. Complaint ¶¶ 28, 47. I find that all claims arise from dealings between Trojan and Contractors and as such Contractors has made no claim for contribution sufficient to withstand this motion to dismiss. In sum, because I decline to assert ancillary jurisdiction, all state law claims must fall.

**3.** The court in *Community Coffee* ordered the third-party plaintiffs to show cause as to why their impleader claims should not be dismissed. It appears from the decision that the objection to subject matter jurisdiction was raised by the court *sua sponte* rather that through a motion by the third-party defendants. Accordingly, an opportunity to present argument was given the third-party plaintiffs.

**436**

For the foregoing reasons, motion to dismiss the third party complaint is granted. The third-party complaint is therefore dismissed in its entirety as against the City.

SO ORDERED.