**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Jose GONZALEZ, Roberto Gonzalez,
Jorge Luis Fonte, Manual Rodriguez
a/k/a Manny, Defendants–Appellants.**

**No. 91–5404.**

United States Court of Appeals,
Eleventh Circuit.

May 26, 1994.

**1046**

Robert N. Scola, Jr., Miami, FL, for Jose Gonzalez.

G. Richard Strafer, Jose M. Quinon, Quinon & Strafer, P.A., Miami, FL, for Roberto Gonzalez.

G. Richard Strafer, Quinon & Strafer, P.A., Miami, FL, for Jorge Luis Fonte.

Patricia Jean Kyle, Miami, FL, (IFP-Court-appointed), for Manual Rodriguez.

Kathleen Salyer, Linda Collins Hertz, Dawn Bowen, Miami, FL, for U.S.

Before HATCHETT and EDMONDSON, Circuit Judges, and FRIEDMAN *, Senior Circuit Judge.

\* Honorable Daniel M. Friedman, Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation.

1. Defendants are Roberto and Jose Gonzalez, Gorge Fonte, and Manuel Rodriguez. One other co-conspirator, Charles Orrett, pleaded guilty and testified for the government at the appellants' trial. The Gonzalez brothers, Fonte and Rodriguez were convicted after a seven-week jury trial.

2. Defendants' other contentions, including a *Batson* challenge based on the government's striking

**PER CURIAM:**

Defendant-appellants were convicted on many narcotics violations and Racketeer Influenced and Corrupt Organizations (RICO) conspiracy in violation of 18 U.S.C. § 1962(d).[1] They allege several errors occurred at trial. Only two deserve discussion.[2] In this case we consider whether, under Florida law, police use of handcuffs on a victim while committing a larceny makes the act a robbery for purposes of 18 U.S.C. § 1961(1)(A). We also decide whether the heightened evidentiary requirements imposed on the use of "net worth" or "cash expenditure analysis" evidence in tax evasion cases apply when such testimony is used to corroborate other evidence in a drug case.

### I. *Facts and Background*

Defendants were part of a scheme, organized around the Metro–Dade County Police Department (Metro–Dade), to steal drugs and money from drug dealers. The convicted co-conspirators were present or former Metro–Dade police officers; two worked in the Department's organized crime bureau. Through their contacts they were able to find out about or to organize drug transactions. Then, they would use their police authority to bust the transactions and to confiscate the money and drugs that was changing hands. They later sold the seized contraband and split the proceeds. These practices formed the basis for the RICO conspiracy Count.[3]

Two aspects of the case concern us now. First, defendant Fonte was only charged personally with predicate acts 7(c) and 10. Both of these acts charged robbery. He claims the events on which these allegations were based constituted a larceny. A robbery is a "racketeering activity" for purposes of feder-

of some hispanic potential jurors, an alleged Jenks Act violation, and challenges to the way the jury was and was not instructed, are meritless.

3. The RICO conspiracy charge alleged some eighteen racketeering or "predicate" acts were committed in furtherance of the conspiracy. Predicate acts 3, 6, 11 and 18 were eventually struck. All racketeering acts charged involved narcotics or robbery offenses.

al RICO, but a larceny is not. *See* 18 U.S.C. § 1961(1)(A). So, Fonte says he is not chargeable personally with predicate offenses and his conviction must be reversed.

Second, the government closed its case with testimony from witness Andrew Bennett on defendants Roberto and Jose Gonzalez' net worth. Defendants contend the district court erred in denying their motions to exclude and to strike Bennett's testimony and in refusing the defendants' requested jury instruction on the issue. They argued that the government should be required to adhere to the strict evidentiary requirements imposed on this kind of evidence in tax evasion cases. We address these contentions in turn.

## II.  *Discussion*

### A.  *Predicate Acts Chargeable to Fonte*

■ To qualify as a predicate act for purposes of federal RICO, an act must be a "racketeering activity" as defined by state law. 18 U.S.C. § 1961(1)(A). Larceny is not a racketeering activity, but robbery is. Under Florida law, robbery is a taking by "force, violence, assault, or putting in fear." Fla.Stat. ch. 812.13 (1992).[4] No force is involved in a larceny. The Florida Supreme Court has said that, because the threat of police action alone does not constitute force, a taking contemporaneous with such a threat is no robbery. *Montsdoca v. State*, 84 Fla. 82, 93 So. 157 (1922); *Dixon v. State*, 506 So.2d 55, 57 (Fla.Dist.Ct.App.1987). Fonte argues the two predicate acts with which he was charged merely involved threats of po-

lice action and were larcenies. So, he claims his conviction should be reversed.[5]

During the events underlying acts 7(c) and 10, Fonte or his co-conspirators restrained with handcuffs their victims and detained the victims in the back of police cars. These physical acts against persons go beyond just an "express or implied threat of arrest or other police action". *Dixon*, 506 So.2d at 57 (threat to reveal wrong doing is not force or intimidation for robbery). These acts are sufficient to satisfy the force element of robbery. *See Montsdoca*, 93 So. at 159. Defendants did use physical force to steal drugs and demonstrated their desire to create fear to get the dealers to part with their goods. The acts were properly considered predicate acts for purposes of RICO. Fonte's conviction is affirmed.[6]

### B.  *Net Worth Testimony*

■ Andrew Bennett is employed by Metro–Dade County as an audit manager in the Department of Internal Auditing. At trial, he testified about the Gonzalez brothers' net worth and the results of a "cash expenditure analysis".[7] His testimony was based on his review of the brothers' abundant financial records and was admitted under Federal Rule of Evidence 1006 as summary testimony of voluminous evidence. It was offered to corroborate evidence of the Gonzalez' unexplained income.

While defendants concede the trial judge has broad discretion to admit this kind of evidence, they invoke *Holland v. United*

---

4. The pertinent language of the statue in effect during the relevant time period was practically identical. *See* Fla.Stat. ch. 812.13 (1985).

5. Originally, seven predicate acts were based on robbery charges. Defendants argued to the district court that none of these seven charges could be robbery because all involved police action. The district court considered the appellants' challenge and determined three of these acts were larcenies. It dismissed these charges. But the district court also concluded the four events challenged on appeal were robbery. Two of the four, acts 8 and 9, we need not discuss at length. Although those two involved takings while using police action, defendants used force to gain entry to certain premises. One even involved a shooting. These incidents involved force.

6. We also note that as long as Fonte agreed with other conspirators that two or more acts amounting to robberies would be committed in furtherance of the conspiracy, Fonte's conviction could probably be affirmed. This conclusion seems true even if both acts he was personally charged with were larcenies. *See United States v. Gonzalez*, 921 F.2d 1530, 1540 (11th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 178, 116 L.Ed.2d 140 (1991). We need not decide this question though because we conclude Fonte's offenses were properly considered robberies.

7. Bennett concluded that Jose Gonzalez' net worth was significantly greater during periods he was allegedly involved in the charged activities. Bennett also testified that both brothers' spending during this time exceeded their legitimate income.

**1048**

*States,* 348 U.S. 121, 75 S.Ct. 127, 99 L.Ed. 150 (1954) and claim Bennett's testimony should have been subject to the same rigorous evidentiary requirements that such "net worth" evidence is subject to in tax evasion cases.[8] We disagree and decline to extend *Holland* to prosecutions like this one.

The government commonly uses "net worth" or "cash expenditure analysis" evidence in tax evasion cases. And it is true that when it does, it must meet strict evidentiary requirements. But, unlike tax evasion cases, the circumstances of a drug prosecution do not compel the application of these standards. In tax cases, net worth proof is the crucial—and often the only—evidence available to prove wrongdoing. It goes to an element of the offense and triggers a conclusive inference of guilt. So, high restrictions on its admissibility are warranted.[9]

But in this case, the evidence was corroborative only. Strict evidentiary conditions are not necessary to protect the defendants' due process rights. Any shortcomings in Bennett's testimony went to its weight, not its admissibility.[10] The district court did not abuse its discretion. The district court properly concluded that the credibility of Bennett's testimony, weighed against the significant rebuttal evidence offered by appellants, was for the jury.

AFFIRMED.

---

8. Briefly stated, to admit this evidence in tax cases, the government must establish an "opening net worth" with "reasonable certainly". The government also must prove that it investigated and negated every potential source of legitimate income. The jury is usually instructed on the elevated burden of proof the government must meet when using the evidence. *See Holland,* 348 U.S. at 121, 75 S.Ct. at 127.

9. A "net worth" analysis is often prompted by the government's conclusion that the taxpayer's records are an inadequate basis for determining tax liability. Briefly stated, the government determines a person's "opening net worth" or "total net value" at the beginning of a given year.

Then, it proves increases in the taxpayer's worth for succeeding years during the period in question and calculates the difference between the adjusted net values of the taxpayer's assets at the beginning and end of each year involved. The taxpayer's non-deductible expenditures are added to the increases, and if the resulting figure is substantially greater than the taxable income reported by the individual for that year, it is considered unreported taxable income. *See id.*

10. Defendants cross examined Bennett on his methods and conclusions at length. And they offered their own financial expert to rebut Bennett's testimony. The jury considered all evidence and convicted defendants.