311 F.Supp.2d 344 (2004)
Donald R. WOOD, Jr., individually and on behalf of all other similarly situated, Plaintiff,
v.
INCORPORATED VILLAGE OF PATCHOGUE OF NEW YORK, F. Taldone, individually and in his capacity as constable, Mary Pontieri, individually and in her capacity as former Village of Patchogue clerk, Todd C. Johnson individually and in his capacity as former Village of Patchogue treasurer, Rose Marie Berger, individually and in her capacity as former Village of Patchogue clerk, Deidre O'Brien, individually and in her capacity as constable, Stephen Keegan, individually and in his capacity as former mayor of Patchogue, Jeffrey Kracht, individually and in his capacity as former chief constable, Nancy Auer, individually and in her capacity as Village of Patchogue Justice Court clerk, Louis Tomeo, individually and in his capacity as chief constable, Vincent Yannacone, Jr., individually and in his capacity as Judge of the Village of Patchogue Justice Court, Gail Reilly, individually and in her capacity as Village of Patchogue Justice Court clerk, Richard Collocola, individually and in his capacity as Village of Patchogue clerk, Patrick O'Connell, individually and in his capacity as Justice of the Village of Patchogue Court, Deborah Gustam, individually and in her capacity as Clerk of the Village of Patchogue Justice Court, Edward Ihne, individually and in his capacity as Mayor of Patchogue and in his capacity as former village trustee, Jerry Avellino, individually and in his capacity as constable, Salvatore Barbara, individually and in his capacity as constable, Nicholas Chirillo, individually and in his capacity as constable, Alexander Costello, individually and in his capacity as constable, Frances Cuozzo, individually and in his capacity as constable, Richard Debetta, individually and in his capacity as constable, Barry Donadio, individually and in his capacity as constable, Michael Donovich, individually and in his capacity as constable, Daniel Durinick, individually and in his capacity as constable, Scott Eckert, individually and in his capacity as constable, Erick Evrly, individually *345 and in his capacity as constable, Richard Fiorucci, individually and in his capacity as constable, Casto Gonzalez, individually and in his capacity as constable, William B. Hart, individually and in his capacity as constable, Donald Henderson, individually and in his capacity as constable, Ranald Holcombe, individually and in his capacity as constable, Gerald Lenox, individually and in his capacity as constable, William Logan, individually and in his capacity as constable, Karl Makinen, individually and in his capacity as constable, Peter Marks, individually and in his capacity as constable, Erick McFarlan, individually and in his capacity as constable, James Nudo, individually and in his capacity as constable, Brian Panuccio, individually and in his capacity as constable, Kevin Petterson, individually and in his capacity as constable, Susan Ralph, individually and in his capacity as constable, Stephen E. Ramsland, individually and in his capacity as constable, Ferdinando Sabellichi, individually and in his capacity as constable, Cosmo Stoia, individually and in his capacity as constable, Luis Velez, individually and in his capacity as constable, Basil Wattley, individually and in his capacity as constable, Joseph Wood, individually and in his capacity as constable, Nicholas Zambelli, individually and in his capacity as constable, Defendants.
No. 01-CV-0229(ADS)(ARL).
United States District Court, E.D. New York.
March 31, 2004.
*346 *347 Scott & Scott, L.L.P. by Jonathan C. Scott, Esq. and Robert J. Scott, Esq., Melville, NY, for Plaintiff.
L'Abbate, Balkan, Colavita & Contini, L.L.P. by Vincent R. Fontana, Esq., Garden City, NY, for Defendants.

MEMORANDUM OF DECISION AND ORDER
SPATT, District Judge.
This case arises out of claims by the plaintiff Donald R. Wood, Jr. ("Wood" or the "plaintiff"), on behalf of himself and a class of similarly situated persons, that the defendants the Village of Patchogue ("Patchogue" or the "Village") and forty eight of its present and former officials and employees (collectively, the "defendants") created a scheme under which they, under color of law, purported to enforce traffic and other laws and collect purported fines for alleged violations of those laws through *348 a distinct enterprise in violation of, among other things the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961 et seq., ("RICO") and 42 U.S.C. § 1983 ("Section 1983"). Presently before the Court is the defendants' motion to dismiss the first amended complaint pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ.P.") 12(b)(6) and 9(b).

I. BACKGROUND
At the outset, the Court notes that the amended complaint contains more than 75 pages and is in excess of 175 paragraphs. This complaint is very similar, except for the names, dates, and several facts, to two other class action complaints filed by plaintiff's counsel in this Court. See Brewer v. Village of Old Field, et al., No. 00 Civ. 6072 and Robert M. Coco, Jr. v. Incorporated Village of Belle Terre, No. 01 Civ. 5061.
The facts are taken from the amended complaint and are taken as true for purposes of this motion.
The plaintiff commenced this action on January 16, 2001, alleging that at some point prior to 1991, the Village transferred, or was legally bound to transfer by approval of the majority of its voters, its police functions to Suffolk County (the "County").
Despite having allegedly transferred all of its police authority to the County, the plaintiff claims that in or about 1991, the Village, led by then Mayor Franklin Leavandosky ("Leavandosky"), "hatched the Scheme" to create a private police force known as the constabulary. Am. Compl. ¶ 86. At that time, the Village submitted proposed statements outlining the duties of its constables (the "Duties Statements") to the Suffolk County Civil Services Department (the "Civil Services Department"). These Duties Statements indicated that holding a gun permit was a qualification of employment as a constable.
In a March 23, 1994 letter to Leavandosky, the Commissioner of the New York State Division of Criminal Justice Services ("Division of Criminal Justice Services"), denied the Village's request to register their constables in the County's Peace Officer Registry. The plaintiff alleges that this letter placed Leavandosky on notice that "a Village constabulary would be in violation of New York Criminal Procedure Law ("CPL") § 2.10(1) as being contrary to local law and controlling court decisions." Am. Compl. ¶ 31.
By letter dated November 14, 1996, Edward Ihne ("Ihne"), acting as the "Commissioner of the Village" made another request to the Division of Criminal Justice Services to allow the Village's constables to be registered in the County's Peace Officer Registry. This request was also denied. The plaintiff alleges that this letter also served to remind Ihen that the Village was not a "`duly authorized law enforcement agency.'" Am. Compl. ¶ 89.
By letter dated June 23, 1998, the Civil Services Department advised then Mayor Stephan Keegan ("Keegan") that, among other things, the Village must cease the practice of allowing employees to carry guns while enforcing the Village Code. This letter also demanded that the Village respond with a confirmation that this practice had ceased. It is alleged that Keegan never responded to this letter and that the Village constables continued to carry guns in the course of their duties.
By letter dated July 9, 1998, Keegan advised the Civil Services Department that the constables only wrote tickets for Village Code violations. In a letter dated March 2, 1999, the Civil Services Department again stated that because constables are not police officers, it was inappropriate for them to carry guns during the course *349 of their employment. This letter also indicated that its prior approval of the Duties Statements allowing constables to carry guns was erroneous. The Civil Services Department requested that the Village submit new Duties Statements affirming that constables do not carry guns. The plaintiff alleges that as of 1999, the Village had not submitted the Duties Statements requested by the Department.
It is further alleged that in a December 2, 1999 grant application, the Village of Patchogue Justice Court (the "Justice Court") indicated that it had adjudicated more than 6600 vehicle and traffic law citations.
The plaintiff also alleges that "two widely publicized involving similar schemes lawsuits [one in 1967 involving the Village of Port Jefferson and one in 1997 involving the Village of Old Field] were adjudicated." Am. Compl. ¶ 93. These lawsuits provided the defendants with knowledge that "the establishment of a private police force by a village who had previously conceded law enforcement jurisdiction to the county was illegal." Id. The plaintiff also alleges that a 1984 New York Court of Appeals decision also held that actions by an unauthorized Village constabulary were void.
The plaintiff further claims that the defendants made misrepresentations to the County by submitting certified annual payroll statements to the Civil Service Department, certifying that the employees performed solely the duties as approved in the Duties Statements. However, the plaintiff alleges that the Chief Constables Kracht and Tomeo, and Mayors Ihne and Keegan allowed and directed the constables to perform duties outside their authority with respect to the enforcement of vehicle and traffic laws.

A. As to the Plaintiff Donald R. Wood, Jr.
On November 25, 2000, Wood was driving in Patchogue when he was detained by Constable F. Taldone ("Taldone") for making an illegal right turn. At that time, Taldone was driving a vehicle with a flashing red emergency light, wearing a police uniform with a badge and carrying a gun. Wood claims that Taldone held himself out as a police officer and issued to Wood a "Uniform Traffic Ticket" (the "Ticket"). The Ticket indicated that it was issued by the State of New York Department of Motor Vehicles and that the police agency issuing the ticket was the Village. This Ticket ordered the plaintiff to appear in the Patchogue Village Court (the "Village Court").
Wood claims that on or about December 3, 2000 and January 4, 2001, Village Clerks Nancy Auer ("Auer"), Gail Reilly ("Reilly"), and Deborah Gustam ("Gustam") (collectively, the "Village Clerks"), mailed written notices to him directing him to appear in the Village Court regarding the citation. These notices also informed Wood that he could plead guilty and pay a fine to the Justice Court. This fine included a "Mandatory NYS Surcharge," payable to "Justice Court, Village of Patchogue." After allegedly being threatened that his driving privileges would be taken away, Wood entered a plea of guilty and paid a fine under protest.

B. As to the Proposed Class
As stated above, the plaintiff purports to brings this action on behalf of himself and a class of similarly situated persons. The plaintiff claims that from 1991 to the date this action was commenced (the "Class Period"), the defendants, which include the village constables, village officials and village clerks, engaged in a scheme

*350 that is designed to detain individuals traveling through Patchogue, issue purported New York traffic tickets, also called "appearance tickets," hold village-court sessions to adjudicate the purported traffic tickets that constituted acts outside the village court's jurisdiction, assess unlawful fines and/or court costs, threaten consequences if the unlawful fines were not paid, and collect unlawful fines and costs, all to the personal benefit of the [d]efendants (the "Patchogue Private Police Force Scheme" or the "Scheme").
The plaintiff claims that the Scheme was managed by Justices Yannacone and O'Connell, Mayors Keegan and Ihne, and Chief Constables Kracht and Tomeo. Other participants in the scheme include Village Constables Louis Tomeo ("Tomeo"), F. Taldone ("Taldone"), Jeffrey T. Kracht ("Kracht"), Deidre O'Brien ("O'Brien"), Jerry Avellino ("Avellino"), Salvatore Barbara ("Barbara"), Nicholas Chirillo ("Chirillo"), Alexander Costello ("Costello"), Frances Cuozzo ("Cuozzo"), Richard DeBetta ("DeBetta"), Barry Donadio ("Donadio"), Michael Donovich ("Donovich"), Daniel Durnick ("Durnick"), Scott Eckert ("Eckert"), Erick Everly ("Everly"), Richard Fiorucci ("Fiorucci"), Casto Gonzalez ("Gonzalez"), William Hart ("Hart"), Donald Henderson ("Henderson"), Ranald Holcombe ("Holcombe"), Gerald Lenox ("Lenox"), William Logan ("Logan"), Karl Makinen ("Makinen"), Peter Marks ("Marks"), Richard Matson ("Matson"), Erick McFarlan ("McFarlan"), James Nudo ("Nudo"), Brian Panuccio ("Panuccio"), Kevin Peterson ("Peterson"), Susan Ralph ("Ralph"), Stephen Ramsland ("Ramsland"), Ferdinando Sabellichi ("Sabellichi"), Cosmo Stoia ("Stoia"), Luis Velez ("Velez"), Basil Wattley ("Wattley"), Joseph Wood ("Wood"), and Nicholas Zambelli ("Zambelli") (collectively, the "Village Constables"); and Village Clerks Mary Pontieri ("Pontieri"), Rose Marie Berger ("Berger"), Richard Collocola ("Collocola"), Gail Reilly ("Reilly"), Nancy Auer ("Auer"), Deborah Gustam ("Gustam") (collectively, the "Village Clerks").
The plaintiff alleges that the Village Constables at all times knew that the Village had irrevocably assigned all of its police authority to Suffolk County but nevertheless continued to represent themselves as police officers and wore uniforms, badges, insignia, and other paraphernalia which provided the impression that they were acting with the approval or authority of a legitimate police department. The plaintiff alleges that during the Class Period, the constables issued in excess of 13,000 appearance tickets for vehicle and traffic law violations which were similar to the above mentioned Ticket received by Wood. In addition, the plaintiff further alleges that the Village Constables obtained civilian weapons permits "even though their actual intention was to carry those guns as if they were law enforcement officials acting under color of state law," Am. Compl. ¶ 73. Moreover, although the Village Constables did not undergo training at police academy or hold service certification to perform law-enforcement functions, the Village purchased weapons for them.
In addition, the plaintiff claims that "on thousands of occasions" the Village Clerks and former clerks mailed communications regarding the citations and/or appearance tickets, Am. Compl. ¶ 154, and used the wires in furtherance of the Scheme. Finally, the plaintiff alleges that Justices Yannacone and O'Connell adjudicated the hearings and unlawfully collected fines for the alleged violations of the vehicle and traffic law.
The plaintiff claims that all of the defendants violated 18 U.S.C. §§ 1962(b) and (d), the RICO statute; Berger, Pontieri, Collocola, Auer, Gustam, Reilly, Yannacone, O'Connell, Keegan, Ihne, Kracht and *351 Tomeo violated 18 U.S.C. § 1962(c); and all of the defendants violated 42 U.S.C. § 1983 ("Section 1983"). The plaintiff also brings a New York State law cause of action for Money Had and Received against Berger, Pontieri, Collocola, Auer, Gustam, Reilly, Yannacone, Keegan, Ihne, Kracht, and Tomeo. Presently before the Court is a motion by the defendants to dismiss the complaint pursuant to Rules 12(b)(6) and 9(b).

II. DISCUSSION

A. The Standards

1. Rule 12(b)(6)
In reviewing a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court should dismiss the complaint only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his complaint which would entitle him to relief. King v. Simpson, 189 F.3d 284, 287 (2d Cir.1999); Bernheim v. Litt, 79 F.3d 318, 321 (2d Cir.1996). The court must accept as true all of the factual allegations set out in the complaint, draw inferences from those allegations in the light most favorable to the plaintiff, and construe the complaint liberally. See Tarshis v. Riese Org., 211 F.3d 30, 35 (2d Cir.2000) (citing Desiderio v. National Ass'n of Sec. Dealers, Inc., 191 F.3d 198, 202 (2d Cir.1999)). In its analysis under Rule 12(b)(6), the court "must confine its consideration to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." Tarshis, 211 F.3d at 39 (citing Allen v. WestPoint-Pepperell, Inc., 945 F.2d 40, 44 (2d Cir.1991)). The issue is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir.1995).

2. Rule 9(b)
Rule 9(b) sets forth additional pleading requirements with respect to allegations of fraud. The reason for these requirements are three-fold: (1) to provide the defendant with fair notice of the claims against her; (2) to protect the defendant from harm to her reputation or goodwill as a result of unfounded allegations of fraud; and (3) to reduce the number of strike suits. See DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir.1987). "[C]onclusory allegations that defendant's conduct was fraudulent or deceptive are not enough." Decker v. Massey-Ferguson, Ltd., 681 F.2d 111, 114 (2d Cir.1982). To satisfy the pleading requirements of Rule 9(b), the plaintiff must plead the circumstances of the fraud with particularity and that the defendant acted with fraudulent intent. Fed.R.Civ.P. 9(b).

a. Pleading the Circumstances of Fraud
Rule 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed.R.Civ.P. 9(b). In order to satisfy this requirement, the complaint must, "`(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir.1994) (quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir.1993)). As such, this requires the plaintiff to identify which defendant caused each allegedly fraudulent statement to be spoken, written, wired or mailed, and to whom the communication was made; when the communication was made; and how it advanced the fraudulent scheme. *352 McLaughlin v. Anderson, 962 F.2d 187, 191 (2d Cir.1992).
However, "[i]n cases in which the plaintiff claims that mail and wire fraud were in furtherance of a larger scheme to defraud, the communications themselves need not have contained false or misleading information." Calabrese v. CSC Holdings, Inc., 2003 WL 22052824, at *6 (E.D.N.Y. Aug. 13, 2003). Under these circumstances, Rule 9(b) "only requires the plaintiff to delineate, with adequate particularity, the specific circumstances constituting the overall fraudulent scheme." Id. (citations omitted); see also In re Sumitomo Copper Litig., 104 F.Supp.2d. 314, 319 (S.D.N.Y.2000) (quoting In re Sumitomo, 995 F.Supp. 451, 456 (S.D.N.Y.1996)).
Where there are multiple defendants, Rule 9(b) requires that the plaintiff allege facts specifying each defendant's contribution to the fraud. See DiVittorio, 822 F.2d at 1247 ("Where multiple defendants are asked to respond to allegations of fraud, the complaint should inform each defendant of the nature of his alleged participation in the fraud."). However, "it is not necessary to allege ... that the defendants have personally used the mails or wires; it is sufficient that a defendant `causes' the use of the mails or wires." Jerome M. Sobel & Co. v. Fleck, No. 03 Civ. 1041, 2003 WL 22839799, at *6 (S.D.N.Y. Dec. 1, 2003) (citing 18 U.S.C. §§ 1341, 1343).

B. Judicial Immunity
The plaintiff seeks declaratory and injunctive relief against Justice Yannacone and Justice O'Connell. The plaintiff also seeks actual damages against Justice Yannacone for his "non-judicial acts." Am. Compl. "Prayer" ¶ 3.
Here, the plaintiff alleges that Justice Yannacone, among other things,
hatched the Scheme ... knew at all times that Patchogue had irrevocably assigned all [of] its police authority to Suffolk County ... [was] personally involved in the management and control of the Scheme ... destroyed [the "mantel of impartiality"] through his direct control and indirect financial interest over the fines assessed in the cases he adjudicates ... was also an accomplice to criminal impersonations by village personnel acting as police officers, mail and wire fraud, filing false instruments, extortion, and other illegal and improper activities ... acted outside his jurisdiction as a[V]illage [Justice] to impose fines and penalties on class members ... acted beyond the jurisdiction of the [Village Justice Court] as an accomplice to the other [d]efendants in coercing members of the class to pay money in the Scheme....
Am. Compl. ¶ 80.
Judges have absolute immunity from suit for judicial acts performed in their judicial capacities. Mireles v. Waco, 502 U.S. 9, 12, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991) (per curium); see also Oliva v. Heller, 839 F.2d 37 (2d Cir.1988). This absolute judicial immunity is not overcome by allegations of bad faith or malice, nor can a judge "be deprived of immunity because the action he took was in error ... or was in excess of his authority." Mireles, 502 U.S. at 13, 112 S.Ct. 286 (quoting Stump v. Sparkman, 435 U.S. 349, 356, 98 S.Ct. 1099, 1105, 55 L.Ed.2d 331 (1978)). Rather, a judge will be subject to liability "only when he has acted in the clear absence of all jurisdiction." Stump, 435 U.S. at 357, 98 S.Ct. 1099 (citation omitted); see also Tucker v. Outwater, 118 F.3d 930, 932 (2d Cir.1997); Bradley v. Fisher, 80 U.S. (13 Wall) 335, 352, 20 L.Ed. 646 (1871) (noting that "clear absence of all jurisdiction" would be found if, for example, a probate judge, with jurisdiction over only wills and estates, should try a criminal case. On the other hand, if a judge of a *353 criminal court should convict a defendant of a nonexistent crime, he would merely be acting in excess of his jurisdiction and would be immune.").
In the Court's view, the conclusory allegations against Justice Yannacone are insufficient to sustain a claim for "actual damages ... against Yannacone in his non-judicial capacity." Am. Compl. "Prayer" ¶ 3. Thus, the Court declines to destroy the expansive and broadly construed doctrine of judicial immunity. See Alvarez v. Snyder, 264 A.D.2d 27, 33, 702 N.Y.S.2d 5, 11-12 (1st Dep't 2000) ("It has long been recognized that few doctrines were more solidly established at common-law than the immunity of judges from liability for damages for acts committed within their judicial discretion.") (Internal quotation and citations omitted). Accordingly, the claim for actual damages against Justice Yannacone is dismissed. See Stump, 435 U.S. at 356-7, 98 S.Ct. 1099; see also Mireles v. Waco, 502 U.S. 9, 12, 112 S.Ct. 286, 116 L.Ed.2d 9 (1991) (per curium) (judicial immunity is an immunity from suit, not just from the ultimate assessment of damages.) (citation omitted).
Furthermore, the declaratory and injunctive relief sought against Justice Yannacone and Justice O'Connell does not involve and is not relevant to these defendants. In particular, the plaintiff seeks a declaration that the
referendum transferring all Patchogue's police functions to the Suffolk County police district is binding on Patchogue ... that Patchogue has no authority to operate a private police force, detain and/or arrest any persons residing in or traveling through Patchogue, or to empower anyone to enforce the New York Vehicle and Traffic Law or Patchogue local ordinances, and that no one employed by or in association with Patchogue has the authority or right to issue New York Uniform Traffic Tickets or Simplified Traffic Informations,
Am. Compl. ¶ 105, and that the defendants be enjoined from "benefitting from their wrongful acts." These allegations do not involve Justices Yannacone or O'Connell.
In any event, "to the extent [p]laintiff's claims seek injunctive and declaratory relief (against the [Justices] in either their official or individual capacities), the Rooker-Feldman doctrine is a barrier." Tsabbar v. Booth, 293 F.Supp.2d 328, 335 (S.D.N.Y.2003) (citing Sundwall v. Leuba, No. 00 Civ. 1309, 2001 WL 58834, at *6-*7 (D.Conn. Jan. 23, 2001)). Under this doctrine, "federal district courts lack jurisdiction to review state court decisions whether final or interlocutory in nature," Gentner v. Shulman, 55 F.3d 87, 89 (2d Cir.1995), and "federal review, if any, can occur only by way of a certiorari petition to the Supreme Court." Moccio v. New York State Office of Court Admin., 95 F.3d 195, 197 (2d Cir.1996). Thus, even if the declaratory and injunctive relief sought was relevant to these defendants, the Rooker-Feldman doctrine would bar such causes of action.
Accordingly, the causes of action against Justice Yannacone and Justice O'Connell are dismissed in their entirety.

C. Civil RICO
18 U.S.C. § 1964(c) creates a private right of action for "[a]ny person injured in his business or property by reason of a violation of section 1962." To state a claim for damages based upon a violation of section 1962, a plaintiff must establish that "a defendant, through the commission of two or more acts constituting a pattern of racketeering activity, directly or indirectly participated in an enterprise, the activities of which affected interstate or foreign commerce." DeFalco v. Bernas, 244 F.3d 286, 306 (2d Cir.2001). Here, the plaintiff *354 asserts three separate causes of action under RICO pursuant to 18 U.S.C. §§ 1962(b), (c), and (d).

1. As Against the Village
As stated above, the plaintiff seeks to hold the Village liable under the civil RICO statute. However, "[w]hile a municipality is undoubtedly a `person' within the meaning of 18 U.S.C. § 1961(3), it is incapable of forming the requisite criminal intent for RICO liability." Frooks v. Town of Cortlandt, 997 F.Supp. 438, 457 (S.D.N.Y.1998); O & K Trojan, Inc. v. Municipal & Contractors Equipment Corp., 751 F.Supp. 431, 434 (S.D.N.Y.1990) ("[A] municipal corporation[ ] is incapable of having the criminal intent to support RICO's predicate offense requirement."); see also Nu-Life Construction Corp. v. Board of Education of City of New York, 779 F.Supp. 248, 251 (E.D.N.Y.1991). "[E]very court in [the Second] Circuit that has considered the issue has held that a municipality cannot form the requisite criminal intent to establish a predicate act, and has therefore dismissed the claim against the municipality." Frooks, 997 F.Supp. at 457. ((collecting cases)). Moreover, mens rea on the part of the agents of the municipality may not be imputed to the municipality through the doctrine of respondeat superior." Rini v. Zwirn, 886 F.Supp. 270, 295 (E.D.N.Y.1995).
The plaintiff argues that the decision of the United States Supreme Court in Cook County v. United States ex rel. Chandler, 538 U.S. 119, 123 S.Ct. 1239, 155 L.Ed.2d 247 (2003) authorizes RICO actions against municipalities. The Court disagrees. In Cook County, the Supreme Court held, among other things, that municipalities are subject to treble damages under the False Claims Act (the "FCA") because the FCA's definition of "person" was intended to cover local governments. However, the Supreme Court did not address the issue of whether a municipality could form the necessary mens rea to commit predicate acts in a RICO case. Therefore, the Court will follow the well-settled law within the Second Circuit and declines to impose civil RICO liability on the Village. Accordingly, the civil RICO claims against the Village are dismissed.

2. As Against All of the Defendants in their Official Capacity
Because the Village cannot be held liable in a civil RICO case as a matter of law, neither may its employees be responsible in their official capacities. See Frooks, 997 F.Supp. at 457. Accordingly, to the extent that the defendants are sued in their official capacities, such claims are also dismissed. However, the plaintiff may proceed against the defendants in their individual capacities. Lathrop v. Juneay & Associates, Inc. P.C., 220 F.R.D. 330, 334 (S.D.Ill.2004) ("To assert a claim against an official in his individual capacity, a plaintiff must assert `that the defendant did something that is something that is tortious independent of the office that the defendant holds.'") (citing Walker, et al. v. Rowe, 791 F.2d 507, 508 (7th Cir.1986) (J. Easterbrook)).

3. 18 U.S.C. § 1962(b) Against All of the Defendants.
As stated above, to state a claim for damages based upon a violation of Section 1962, a plaintiff must establish that "a defendant, through the commission of two or more acts constituting a pattern of racketeering activity, directly or indirectly participated in an enterprise, the activities of which affected interstate or foreign commerce." DeFalco v. Bernas, 244 F.3d 286, 306 (2d Cir.2001). Section 1962(b) states that
[i]t shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of *355 any enterprise, which is engaged in, or the activities of which affect, interstate or foreign commerce.
18 U.S.C. § 1962(b). For purposes of this cause of action, the plaintiff defines the "enterprise" as the "Patchogue Village Court." Am. Compl. ¶ 108. The plaintiff alleges the following predicate acts: Violation of New York Penal Law ("Penal Law") § 190.65(1)(a) Scheme to defraud in the first degree; Penal Law § 155.40 Grand larceny in the second degree; Penal Law § 175.35 offering false instruments for filing; Penal Law § 20 Criminal liability for conduct of another; Penal Law § 190.26 Criminal impersonation in the first degree; and 18 U.S.C. §§ 1341, 1343, and 1951.
To state a claim under Section 1962(b), the plaintiff must make two basic allegations: (1) that the defendants acquired or maintained an interest in the alleged enterprise through a pattern of racketeering activity; and (2) that the plaintiff suffered injury as a result of the acquisition of the enterprise. See O & G Carriers v. Smith, 799 F.Supp. 1528, 1543 (S.D.N.Y.1992). The "acquisition or maintenance injury" must be separate and apart from the injury suffered as a result of the predicate acts of racketeering. Katzman v. Victoria's Secret Catalogue, 167 F.R.D. 649, 657 (S.D.N.Y.1996) (citing Official Publications v. Kable News Co., 775 F.Supp. 631, 635 (S.D.N.Y.1991)). "Without a distinct `acquisition injury,' [a plaintiff] cannot state a cause of action under subsection 1962(b)." Discon, Inc. v. NYNEX Corp., 93 F.3d 1055, 1062-63 (2d Cir.1996) rev'd on other grounds, 525 U.S. 128, 119 S.Ct. 493, 142 L.Ed.2d 510 (1998); Redtail Leasing, Inc. v. Belleza, No. 95 Civ. 5191, 1997 WL 603496, at *3 (S.D.N.Y. Sept. 30, 1997) (the injury must be caused by "acquisition of an interest in an enterprise, as distinct from an injury resulting from the pattern of racketeering activity, or the commission of predicate acts."). "Failure to allege such an injury results in dismissal." United States Fire Ins. Co. v. United Limousine Service, Inc., No. 01 Civ. 10821, 2004 WL 324477, at *12 (S.D.N.Y. Feb. 6, 2004).
Here, the plaintiff alleges that his "separate and independent" injury is that he and the class members were "inter alia, coerced into being absent from their jobs or schools and incurr[ed] travel expenses and related costs to appear in the Village Justice Court." Am. Compl. ¶ 130. In the Court's view, these alleged injuries are not separate from those resulting from the predicate acts, namely that the plaintiff plead guilty and paid a fine for committing an illegal right turn. Katzman, 167 F.R.D. at 657. Furthermore, the plaintiff's claim that the alleged predicate acts caused him to, among other things, be absent from school or employment does not afford a basis for Section 1962(b) liability.
The purpose of Section 1962(b) is "to prohibit the takeover of a legitimate business through racketeering, typically extortion or loansharking." Mark v. J.I. Racing, Inc., et al., No. 01 Civ. 10821, 1997 WL 403179, at * 3 (E.D.N.Y.1997) (citation omitted). Because the plaintiff has not alleged facts to suggest a separate acquisition or maintenance injury, the purposes of section 1962(b) are not furthered. See United States Fire Ins. Co., at 450.
Accordingly, the section 1962(b) claims against the defendants are dismissed and the Court need not determine whether the Patchogue Village Court constitutes a section 1962(b) "enterprise."

4. 18 U.S.C. § 1962(c) Against Berger, Pontieri, Collocola, Auer, Gustam, Reilly, Yannacone, O'Connell, Keegan, Ihne, Kracht, and Tomeo
Section 1962(c) "was intended to prevent the operation of a legitimate business *356 or union through racketeering." Mark v. J.I. Racing, Inc., No. 92 Civ. 5285, 1997 WL 40319, at *3 (E.D.N.Y. July 9, 1997). This section states that
[i]t shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
18 U.S.C. § 1962(c).
To state a claim under this section, a plaintiff must allege "(1) conduct (2) of an enterprise (3) though a pattern (4) of racketeering activity." DeFalco v. Bernas, 244 F.3d 286, 306 (2d Cir.2001) (quoting Sedima, S.P.R.L. v. Imrex Co., 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)). The elements of this section must be established as to each individual defendant. DeFalco, 244 F.3d at 306 (citing United States v. Persico, 832 F.2d 705, 714 (2d Cir.1987)). "The focus of section 1962(c) is on the individual patterns of racketeering engaged in by a defendant, rather than the collective activities of the members of the enterprise, which are proscribed by section 1962(d)." Id.

a. As to Justice Yannacone and Justice O'Connell
As stated above, due to the doctrines of judicial immunity and Rooker-Feldman, the claims against Justice Yannacone and Justice O'Connell are dismissed in their entirety.

b. As to Berger, Pontieri, Collocola, Auer, Gustam and Reilly
The plaintiff alleges that Village Clerks Berger, Pontieri, Collocola, Auer, Gustam and Reilly were
personally involved in the management and control of the Scheme through the Class Period by maintaining records of purported citations and/or appearance tickets, issuing notices to persons detained by members of the Scheme, using the mails and wires on thousands of occasions in an attempt to collect unlawful fines and court costs imposed on individuals traveling through Patchogue as part of the Scheme....
Am. Compl. ¶ 82, 83. However, "[s]imply because one provides goods or services that ultimately benefit the enterprise does not mean that one becomes liable as a result." See LaSalle Nat'l Bank v. Duff & Phelps Credit Rating Co., 951 F.Supp. 1071, 1090 (S.D.N.Y.1996) (quoting University of Md. v. Peat, Marwick, Main & Co., 996 F.2d 1534, 1539 (3d Cir.1993)); see also United States Fire Ins. Co., at 450 (It is not enough to merely take directions and perform" `tasks that are necessary and helpful' to the enterprise.") (citing Schmidt v. Fleet Bank, 16 F.Supp.2d 340, 346 (S.D.N.Y.1998) (quotation omitted)). Accordingly, the Section 1962(c) claims against Berger, Pontieri, Collocola, Auer, Gustam, Reilly are dismissed.

c. As to Keegan, Ihne, Kracht, and Tomeo
With regard to this cause of action, the plaintiff alleges that Mayors Keegan and Ihne and Chief Constables Kracht and Tomeo, among other things,
participated in and conducted the affairs of the Patchogue Constabulary through a pattern of racketeering activity by ... personally overseeing the administration and operation of the Patchogue Constabulary, including hiring and equipping the `constables,' directing, managing, and influencing the efforts of the Patchogue Constabulary to enforce New York laws, hiring and providing infrastructure to support the imposition and collection of `fines' on members of the *357 class, and controlling the financial affairs of the Patchogue Constabulary.
Am. Compl. ¶ 137.

i. The Enterprise
To survive a Rule 12(b)(6) motion in a civil RICO section 1962(c) case, the plaintiff must allege the existence of an enterprise which is "separate and distinct from the alleged pattern of racketeering activity." Black Radio Network, Inc. v. NYNEX Corp., 44 F.Supp.2d 565, 580 (S.D.N.Y.1999); see also United States v. Turkette, 452 U.S. 576, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981). Thus, "the enterprise must have some sort of existence independent of the commission of the predicate acts." Mark, 1997 WL 403179, at *4.
Here, the plaintiff alleges that for purposes of this section, the enterprise is the "Patchogue Constabulary (a/k/a the Patchogue Police Department or the Patchogue Code Enforcement Department)." Am. Compl. ¶ 135. Although, the plaintiff does not specifically identify the individuals who comprise this alleged enterprise, the Court will assume that it consists of the above mentioned "Village Constables." With respect to this cause of action, the plaintiff indicates that the "Patchogue Constabulary is an enterprise distinct from the complained of behavior that can exist separate and apart from that behavior because, even in the absence of that behavior, the Patchogue `constables' could properly be designated as code-enforcement officers to enforce non-traffic local ordinances." Id.
The Court notes that this description of the Village Constables appears to contradict the prior allegations that the Village Constabulary was completely unlawful. See e.g., Am. Compl. ¶ 93 ("the establishment of a private police force by a village who had previously conceded law enforcement jurisdiction to the county was illegal."); ¶ 1 ("[The][p]laintiff seeks injunctive relief to end the [d]efendants' scheme of running an illegal, illegitimate private police force ..."); ¶ 70 ("... the [d]efendants received notice ... that [it] had no authority to perform traffic or law enforcement functions"); ¶ 105 ("[The] [p]laintiff requests a declaration ... that Patchogue has no authority to operate a police force.").
Nevertheless, "`in assessing whether an alleged enterprise has an ascertainable structure distinct from that inherent in a pattern of racketeering,' it is appropriate to consider whether `the enterprise would still exist were the predicate acts removed from the equation.'" Schmidt v. Fleet Bank, 16 F.Supp.2d 340, 349 (S.D.N.Y.1998) (quoting Handeen v. Lemaire, 112 F.3d 1339, 1352 (8th Cir.1997)); see also Turkette, 452 U.S. at 583, 101 S.Ct. 2524. Because the plaintiff alleges that the Patchogue Constabulary would exist even if the alleged predicate acts were removed, for purposes of this motion the plaintiff has alleged a section 1962(c) enterprise.
Although it is well-settled that in a Section 1962(c) claim "the person and the enterprise referred to must be distinct," Riverwoods Chappaqua Corp. v. Marine Midland Bank, N.A., 30 F.3d 339, 344 (2d Cir.1994) (citation omitted), a Section 1962(c) claim may be sustained where there is only a partial overlap between the RICO person and the RICO enterprise. Jacobson v. Cooper, 882 F.2d 717, 720 (2d Cir.1989); see also Riverwoods Chappaqua Corp., 30 F.3d at 344. Thus, because a defendant may be a "RICO `person' and one of a number of members of the RICO `enterprise,'" Cullen v. Margiotta, 811 F.2d 698, 730 (2d Cir.1987) cert denied 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 764 (1987), Mayors Keegan and Ihne and Chief Constables, Kracht and Tomeo are sufficiently distinct RICO persons from the RICO enterprise.

*358 ii. Racketeering Activity
Section 1961(1) defines "racketeering activity" as certain criminal acts under state and federal law including, among other things, mail fraud, 18 U.S.C. § 1341, and wire fraud, 18 U.S.C. § 1343. The statute requires a plaintiff to plead at least two predicate acts of racketeering activity. See 18 U.S.C. § 1961(5). The plaintiff alleges the following predicate acts: Violation of New York Penal Law ("Penal Law") § 190.65(1)(a) Scheme to defraud in the first degree; Penal Law § 155.40 Grand larceny in the second degree; Penal Law § 175.35 offering false instruments for filing; Penal Law § 20 Criminal liability for conduct of another; Penal Law § 190.26 Criminal impersonation in the first degree; and 18 U.S.C. §§ 1341, 1343, and 1951.

Acts under New York State Law
None of the alleged New York State Penal Law violations constitute a predicate act for purposes of civil RICO liability. Such is the case because "the only state law crimes which constitute predicate acts of racketeering activity under Section 1961 are those acts `chargeable under State law and punishable by imprisonment for more than one year,' which involve `murder, kidnaping, gambling, arson, robbery, bribery, extortion, dealing in obscene matter, or dealing in a controlled substance or listed chemical.'" Crown Heights Jewish Community Council, Inc., et al. v. Fischer, 63 F.Supp.2d 231, 238 (E.D.N.Y.1999) (citing 18 U.S.C. § 1961(1)(A)) aff'd mem., 216 F.3d 1071, 2000 WL 794152 (2d Cir.2000). None of the state law claims enumerated by the plaintiff fall within this definition. See Crown Heights Jewish Community Council, Inc., et al., 63 F.Supp.2d at 238 (New York Penal Law §§ 175.35 and 155.42 are not predicate acts); Oak Bevs., Inc. v. Tomra of Mass., L.L.C., 96 F.Supp.2d 336, 348 (S.D.N.Y.2000) (New York Penal Law § 190.65 cannot serve as a predicate act). Moreover, the Court notes that "grand larceny does not constitute a charge of robbery." Crown Heights Jewish Community Council, Inc., 63 F.Supp.2d at 238 n. 4 (noting that the plaintiffs have not alleged any use or threat of force, and therefore cannot claim that the defendants committed robbery) (citing United States v. Gonzalez, 21 F.3d 1045, 1047 (11th Cir.1994) (finding state law definition of robbery applicable under RICO statute)).
With respect to Penal Law § 190.26, criminal impersonation in the first degree, this crime does not constitute:
any act or threat involving murder, kidnaping, gambling, arson, robbery, bribery, extortion, or dealing in narcotic or other dangerous drugs, which is chargeable under State law and punishable by imprisonment for more than one year.
18 U.S.C. § 1961(1)(A). Because Penal Law § 190.26 does not constitute any of the enumerated offenses under the RICO statute, this alleged violation cannot serve as a predicate act for purposes of RICO liability.
Moreover, because the plaintiffs failed to set forth a predicate act under State Law, the plaintiffs cannot sustain a predicate act under Penal Law § 20, namely, criminal liability for the conduct of another.

Mail and Wire Fraud
A complaint alleging mail fraud must show (1) the existence of a scheme to defraud, (2) the defendant's knowing and intentional participation in the scheme, and (3) the use of interstate mails or transmission facilities in furtherance of the scheme. S.Q.K.F.C., Inc. v. Bell Atl. TriCon Leasing Corp., 84 F.3d 629, 633 (2d Cir.1996) (citation omitted). Similarly, the elements of wire fraud are (1) a scheme to defraud and (2) use of interstate wire communication to further that scheme. See United States v. Lemire, 720 F.2d 1327 (C.A.D.C. *359 1983) (noting that the requisite elements of wire fraud, 18 U.S.C. § 1343, are identical to those of mail fraud, 18 U.S.C. § 1341).
Here, the defendants challenge, among other things, the sufficiency of the plaintiff's mail fraud allegations. In particular, the defendants maintain that the plaintiff (1) does not particularize how each defendant engaged in mail fraud and (2) fails to specify how these mailings were fraudulent or misleading.
To establish a violation of Section 1962(c), the plaintiff must allege that each defendant committed at least two predicate acts of racketeering activity. See De Falco, 244 F.3d at 306. However, under the mail fraud statute "it is not necessary to allege ... that the defendants have personally used the mails or wires; it is sufficient that a defendant `causes' the use of the mails or wires." Sobel v. Fleck, 2003 WL 22839799, at *6 (S.D.N.Y. Dec. 1, 2003) (citing 18 U.S.C. §§ 1341, 1343); see also United States v. Bortnovsky, 879 F.2d 30, 36 (2d Cir.1989) ("[I]t is not significant for purposes of the mail fraud statute that a third-party, rather than [the] defendant wrote and sent the letter at issue, provid[ed] ... the defendants could reasonably have foreseen that the third-party would use the mail in the ordinary course of business as a result of [the] defendants' act.").
Here, the plaintiff alleges that on or about December 3, 2000 and January 4, 2001, the plaintiff received mailed written notices directing him to appear in the Village Court regarding his citation. Thus, the complaint alleges a close connection between the defendants and the alleged fraudulent scheme that each of these defendants "`could reasonably have foreseen'" that the mail would be used "in the ordinary course of business as a result of' their acts." See Sobel v. Fleck, 2003 WL 22839799, at *7 (citing Bortnovsky, 879 F.2d at 36.).
With regard to the defendants' argument that the plaintiff did not specify how these mailings were fraudulent or misleading,
[i]n cases in which the plaintiff claims that the mails or wires were simply used in furtherance of a master plan to defraud, the communications need not have contained false or misleading information themselves ... In such cases, a detailed description of the underlying scheme and the connection therewith of the mail and/or wire communications, is sufficient to satisfy Rule 9(b).
In re Sumitomo Copper Litigation, 995 F.Supp. 451, 456 (S.D.N.Y.1998) (citing Schmuck v. United States, 489 U.S. 705, 715, 109 S.Ct. 1443, 103 L.Ed.2d 734 (1989)); see also Sobel v. Fleck, 2003 WL 22839799, at *5; Calabrese v. CSC Holdings, Inc., 2003 WL 22052824, at *6 (E.D.N.Y. Aug. 13, 2003) ("In cases in which the plaintiff claims that mail and wire fraud were in furtherance of a larger scheme to defraud, the communications themselves need not have contained false or misleading information."). Thus, under these circumstances, Rule 9(b) "only requires the plaintiff to delineate, with adequate particularity, the specific circumstances constituting the overall fraudulent scheme." Calabrese v. CSC Holdings, Inc., 2003 WL 22052824, at *6 (citations omitted).
Accordingly, the defendants motion to dismiss the Section 1962(c) claims against Keegan, Ihne, Kracht, and Tomeo is denied.

5. 18 U.S.C. § 1962(d) Against All Defendants
Section 1962(d) prohibits any person from conspiring to violate any of the substantive provisions of Section 1962(a)-(c). As set forth above, the only remaining claims under the civil RICO statute are *360 the Section 1962(c) cause of action against Keegan, Ihne, Kracht and Tomeo. Therefore, only the Section 1962(d) cause of action relating to the Section 1962(c) against Keegan, Ihne, Kracht and Tomeo remains. See Discon, Inc. v. NYNEX Corp., 93 F.3d 1055, 1062-63 (2d Cir.1996) ("Since we have held that the prior claims do not state a cause of action for substantive violations of RICO, the present [§ 1962(d)] claim does not set forth a conspiracy to commit such violations.").

D. Section 1983 Against All Defendants
The plaintiff also purports to set forth a Section 1983 cause of action "on behalf of all people who were detained by persons purporting to be Patchogue police officers ... from January 16, 1998 to the present day." Am. Compl. ¶ 172. The plaintiff further alleges that "the [d]efendants" among other things: (1) act[ed] illegally under color of state law to deprive Wood ... their rights under the Fourteenth Amendment," Am. Compl. ¶ 164; (2) "denied Wood ... property rights and liberty interests without due process," id. at 165; (3) "negligently hired and employed individuals purporting to be law enforcement officers who are inadequately trained ...," Am. Compl. ¶ 167; and (4) "act[ed] in willful disregard of or acting with deliberate indifference to clearly established constitutional rights...." Am. Compl. ¶ 168.
The plaintiff's section 1983 cause of action must be dismissed for, among other reasons, the following: (1) the complaint is "fatally defective on its face" because it fails to allege any personal involvement by the defendants, Alfaro Motors, Inc. v. Ward, 814 F.2d 883, 886 (2d Cir.1987) (internal quotations and citations omitted); see also McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir.1977) (it is well-settled that "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983"); (2) negligence is not a valid basis for liability under 42 U.S.C. § 1983, Daniels v. Williams, 474 U.S. 327, 328, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986) ("[T]he Due Process clause is simply not implicated by a negligent act of an official causing unintended loss of or injury to life, liberty, or property." (emphasis in original)); and (3) these allegations fail to comply with Fed. R. Civ P. 8. See Salahuddin v. Cuomo, 861 F.2d 40, 42 (2d Cir.1988) (stating that "the principal function of pleadings under the Federal Rules is to give the adverse party fair notice of the claim asserted so as to enable him to answer and prepare for trial." (citations omitted)); see also Fed.R.Civ.P. 8(a)(2) (requiring that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief....").
Here, the plaintiff failed, among other things, to indicate the specific person who allegedly violated the plaintiff's rights, how due process was allegedly denied, and the specific injury that was allegedly suffered. Accordingly, the plaintiff's Section 1983 claims are dismissed.

E. The New York State Law Cause of Action for Money Had and Received Against All Defendants
As set forth above, the only federal law causes of action remaining in this action, are the Section 1962(c) claims against cause of action against Keegan, Ihne, Kracht and Tomeo. Having dismissed the plaintiff's federal claims against all of the defendants except for those against Keegan, Ihne, Kracht, and Tomeo, the Court will also dismiss the New York state law claims for money had and received against all of the defendants except for those against Keegan, Ihne, Kracht, and Tomeo. See Arroyo v. City of New York, No. 99 Civ. 1458, 2003 WL 22211500, at *3 (E.D.N.Y. Sept. 25, 2003) (citing United *361 Mine Workers v. Gibbs, 383 U.S. 715, 726, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966)); see also Karmel v. Claiborne, Inc., No. 99 Civ. 3608, 2002 WL 1561126, at * 3 (S.D.N.Y. July 15, 2002) ("[w]hen federal claims are dismissed early in the litigation  for example, before trial on a summary judgment motion  dismissal of state law claim[s] ... is appropriate.") (citing Cobbs v. CBS Broadcasting, Inc., 97 Civ. 8284, 1999 WL 244099, at *3 (S.D.N.Y. April 26, 1999)).
However, in light of the fact that the Court has jurisdiction over the plaintiff's Section 1962(c) and (d) claims against Keegan, Ihne, Kracht, and Tomeo the Court will exercise supplemental jurisdiction over the state law claim for money had and received against these defendants.
A cause of action for "monies had and received" is an equitable claim similar in theory to unjust enrichment. It has been described as "an obligation which the law creates in the absence of an agreement when one party possesses money that in equity and good conscience should not be retained and which belongs to another." Bd. of Educ. of Cold Spring Harbor v. Rettaliata, 164 A.D.2d 900, 901, 559 N.Y.S.2d 758 (2d Dep't 1990), remanded on other grounds, 181 A.D.2d 648, 581 N.Y.S.2d 1007 (2d Dep't 1992); Interior by Mussa, Ltd. v. Town of Huntington, 174 Misc.2d 308, 311, 664 N.Y.S.2d 970 972 (1997).
A claim for monies had and received in New York is considered either a "quasi-contract or [a] contract implied-in-law." Bd. of Educ. of Cold Spring Harbor Cent. Sch. Dist., 78 N.Y.2d 128, 138, 572 N.Y.S.2d 885, 888, 576 N.E.2d 716 (1991) (citing State v. Barclays Bank of New York, N.A., 76 N.Y.2d 533, 540, 561 N.Y.S.2d 697, 563 N.E.2d 11 (1990)). Such a claim is recognized as follows:
[I]n the absence of an agreement when one party possesses money that in equity and good conscience [it] ought not to retain and that belongs to another. It allows [a] plaintiff to recover money which has come into the hands of the defendant impressed with a species of trust because under the circumstances it is against good conscience for the defendant to keep the money.
Id. (internal quotations and citations omitted). Although the claim rests upon equitable principles because it concerns the broad considerations of right, justice and morality, it is "considered an action at law." Id. (internal quotations and citations omitted).
Accepting as true all of the factual allegations set out in the complaint, drawing inferences from those allegations in the light most favorable to the plaintiff, and construing the complaint liberally, see Tarshis v. Riese Org., 211 F.3d 30, 35 (2d Cir.2000), in the Court's view, the plaintiff sets forth a cognizable cause of action for money had and received against Keegan, Ihne, Kracht, and Tomeo. Accordingly, the motion to dismiss the claim of money had and received against these defendants is denied.

F. Leave to Amend
Rule 15(a) of the Federal Rules of Civil Procedure states that a party shall be given leave to replead when justice so requires. Branum v. Clark, 927 F.2d 698, 705 (2d Cir.1991); see also Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 48 (2d Cir.1991) (it is the usual practice upon granting a motion to dismiss to allow leave to replead). Leave to amend should be freely granted, "especially where dismissal of the complaint [is] based on Rule 9(b)." Acito v. IMCERA Group, Inc., 47 F.3d 47, 54-55 (2d Cir.1995); Luce v. Edelstein, 802 F.2d 49, 56-57 (2d Cir.1986) ("Complaints dismissed under Rule 9(b) are `almost always' dismissed with leave to amend." (citation omitted)). Here, the *362 plaintiff already filed an amended complaint. However, because the amended complaint was filed pursuant to Fed.R.Civ.P. 15(a) ("amendment as of right"), the Court will grant the plaintiff leave to file a second amended complaint to correct the above mentioned pleading deficiencies.
The Court notes with approval Judge Leisure's thoughtful comments in Spier v. Erber, No. 89 Civ. 1657, at *10 n. 8 (S.D.N.Y. May 24, 1990).
It has become an all too common practice for litigants granted leave to replead to make only minor changes in the original complaint based on an overly restrictive reading of the dismissing court's order, prompting a second motion to dismiss. An amended complaint which fails to replead with sufficient particularity after a finding of lack of specificity may well be regarded by the Court as a frivolous filing in violation of Fed.R.Civ.P. 11. Conversely, a renewed Rule 9(b) motion after an adequate and thorough repleading can also be viewed as frivolous.
Finally, the Court notes that this decision is made at an early stage in this litigation. Its determination regarding the allegations raised in the amended complaint should not be construed as necessarily going to a likelihood of success on the merits.

III. CONCLUSION
Based on the foregoing, it is hereby
ORDERED, that the defendants motion to dismiss the amended complaint is granted except as to the Sections 1962(c) and (d) and the common law money had and received claims against Keegan, Ihne, Kracht, and Tomeo in their individual capacities; and it is further
ORDERED, that the plaintiff is granted leave to file a second amended complaint within thirty days from the date of this order and that the failure to file within this time period will render the dismissal of the plaintiff's claims that were dismissed as a result of this decision, with prejudice; and it is further
ORDERED, that within thirty dates after the filing of the second amended complaint, the plaintiff shall file a RICO case statement consistent with Section 9.2 of the Local Rules for the Northern District of New York, attached to this Memorandum of Decision and Order as Appendix 1; and it is further
ORDERED, that the parties are directed to contact United States Magistrate Judge Arlene R. Lindsay forthwith to schedule the completion of discovery; and it is further
ORDERED, that the Clerk of the Court is hereby directed to amend the caption to read as follows:
 DONALD R. WOOD, JR., individually
 and on behalf of all other similarly
 situated, Plaintiff,
 v.
STEPHEN KEEGAN, individually, EDWARD
 IHNE, individually, JEFFREY
 KRACHT, individually,
 LOUIS TOMEO, individually, Defendants.
SO ORDERED.